**TYSON & MENDES, LLP**

1

Lynn M. Allen, State Bar # 012612
Email: lallen@tysonmendes.com

2

Tyson & Mendes, LLP
7910 E. Thompson Peak Pkwy. Ste. 101

3

Scottsdale, Arizona 85255
Telephone: 480-571-5031

4

Facsimile: 480-245-5424
*Attorneys for Defendant PartnerRe*

5

*Ireland Insurance dac*

6

UNITED STATES DISTRICT COURT

7

DISTRICT OF ARIZONA

8

Tyler B. Wilson,                              )  No. 2:23-cv-00738-DGC
                                              )
9

                          Plaintiff,          )
                                              )  **DEFENDANT PARNTNERRE'S**
v.                                            )  **ANSWER, AFFIRMATIVE AND**
10

                                              )  **COUNTERCLAIM TO**
PartnerRe Ireland Insurance dac, a            )  **PLAINTIFF WILSON'S**
foreign entity,                               )  **COMPLAINT**
11

                          Defe*ndant.*         )
_____               )
12

13

        Defendant PartnerRe Ireland Insurance dac ("PartnerRe") submits its Answer and

14

Affirmative Defenses to the Complaint filed by Plaintiff Tyler B. Wilson ("Plaintiff") and

asserts its Counterclaim as follows:

15

**JURISDICTION/VENUE**

16

        1.      Denied for lack of knowledge.

17

        2.      The policy issued by PartnerRe speaks for itself, and PartnerRe denies any

18

characterization inconsistent therewith.

19

        3.      Admitted.

20

        4.      Admitted.

21

        5.      Admitted.

22

23

1

132788006.1

**TYSON & MENDES, LLP**

6.    This allegation asserts a legal conclusion. To the extent a response is required, admitted.

7.    Admitted. However, PartnerRe filed a Notice of Removal in the United States District Court for the District of Arizona.

### GENERAL ALLEGATIONS

8.    PartnerRe incorporates its answers to the foregoing allegations.

9.    Denied for lack of knowledge.

10.    Denied for lack of knowledge.

11.    Denied for lack of knowledge.

12.    Admitted that a true and correct copy of the Policy is attached.

13.    Admitted.

14.    Admitted.

15.    Admitted that the Policy covered "Loss" as defined therein.

16.    The indemnification agreement between Plaintiff and Fuels speaks for itself, and PartnerRe denies any characterization inconsistent therewith.

17.    The SEC Formal Order of Investigation speaks for itself, and PartnerRe denies any characterization inconsistent therewith.

18.    Denied for lack of knowledge.

19.    Denied for lack of knowledge.

20.    Denied for lack of knowledge.

21.    Denied for lack of knowledge.

2

**TYSON & MENDES, LLP**

22. The SEC enforcement action complaint speaks for itself, and PartnerRe denies any characterization inconsistent therewith.

23. Denied for lack of knowledge.

24. The denial letter issued by PartnerRe dated February 11, 2022 speaks for itself, and PartnerRe denies any characterization inconsistent therewith.

25. The denial letter issued by PartnerRe dated February 11, 2022 speaks for itself, and PartnerRe denies any characterization inconsistent therewith.

26. The SEC request and the Policy speak for themselves, and PartnerRe denies any characterization of them.

**COUNT ONE**

**(Breach Of Contract**

27. PartnerRe incorporates its answers to the foregoing allegations.

28. Denied.

29. Denied.

30. Plaintiff's Paragraph 30 incorrectly identifies the date of the SEC letter as "June 30, 2021" rather than "June 30, 2020." To the extent the allegation refers to the June 30, 2020 letter issued by the SEC, the letter speaks for itself, and PartnerRe denies any characterization inconsistent therewith.

31. Denied.

32. The SEC letter and the Policy speak for themselves, and PartnerRe denies any characterization of them.

3

**TYSON & MENDES, LLP**

1     33.    Plaintiff's Paragraph 33 incorrectly identifies the date of the SEC letter as

2     "June 30, 2021" rather than "June 30, 2020." To the extent the allegation refers to the

3     June 30, 2020 letter issued by the SEC, PartnerRe states that the June 30, 2020 letter and

4     the August 28, 2020 formal order of investigation speak for themselves, and PartnerRe

5     denies any characterization of them.

6     34.    Denied.

7     35.    Denied.

8     36.    This allegation asserts a legal conclusion. To the extent a response is

9     required, denied.

10    37.    Denied.

**COUNT TWO**

**Insurance Bad Faith – Tortious Breach**

**Good Faith and Fair Dealing**

14    38.    PartnerRe incorporates its answers to the foregoing allegations.

15    39.    This allegation asserts a legal conclusion. To the extent a response is

16    required, denied.

17    40.    This allegation asserts a legal conclusion. To the extent a response is

18    required, denied.

19    41.    This allegation asserts a legal conclusion. To the extent a response is

20    required, denied.

21    42.    Denied.

22    43.    Denied.

23

4

TYSON & MENDES, LLP

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

**COUNT THREE**

**Declaratory Judgment**

53.     PartnerRe incorporates its answers to the foregoing allegations.

54.     Denied.

55.     The Policy speaks for itself, and PartnerRe denies any characterization inconsistent therewith.

56.     Denied as stated. The Policy speaks for itself, and PartnerRe denies any characterization inconsistent therewith.

57.     Denied.

58.     The Complaint speaks for itself, and PartnerRe denies any characterization inconsistent therewith. To the extent Plaintiff alleges he is entitled to relief, denied.

59.     This allegation asserts a legal conclusion. To the extent a response is required, denied.

132788006.1

**TYSON & MENDES, LLP**

1

**RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF**

2      60.    Allegations of the Complaint not specifically admitted are denied.

3  PartnerRe denies Plaintiff's entitlement to any relief requested.

4

**PARTNERRE'S AFFIRMATIVE**

5

**PLAINTIFF'S COMPLAINT**

6      Pursuant to Fed. R. Civ. P. 8(c), PartnerRe asserts the following affirmative

7  defenses to Plaintiff's Complaint:

8      61.    *First Affirmative Defense*: Coverage for Wilson's claims is barred by the

9  terms, conditions and other provisions of the Policy, whether titled coverages,

10  conditions, definitions, exclusions, endorsements, declarations or any other name.

11      62.    *Second Affirmative Defense*: Wilson is not entitled to coverage to the

12  extent that providing coverage would be against public policy.

13      63.    *Third Affirmative Defense*: Wilson had a duty to mitigate any damages

14  claimed under the Policy, and any failure to do so may reduce or eliminate part or all of

15  the damages claimed.

16      64.    *Fourth Affirmative Defense*: Wilson's claims are barred, in whole or in

17  part, by the doctrines of waiver, estoppel, unclean hands and laches.

18      65.    *Fifth Affirmative Defense*: Wilson fails to state a claim upon which relief

19  can be granted.

20      66.    *Sixth Affirmative Defense*: The claims asserted by Wilson are barred, in

21  whole or in part, based upon Wilson's failure to timely notice the SEC investigation

22  under the Policy.

23

6

132788006.1

**TYSON & MENDES, LLP**

67.     *Seventh Affirmative Defense*: The claims asserted by Wilson are barred, in whole or in part, to the extent an **Investigation** was first commenced prior to the Policy's policy period.

68.     *Eighth Affirmative Defense*: There is no coverage for the SEC Action and/or other claims under the Policy to the extent they are excluded from coverage by Exclusion B of the Policy, which provides, in relevant part, that PartnerRe shall not be liable to make any payment in connection with that portion of any **Claim**, **Investigation** or **Inquiry**: "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving: 3. any written demand, suit, investigation or other  proceeding  pending, or order, decree or judgment entered, against any **Insured** prior to the date set forth in Item K. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein."

69.     *Ninth Affirmative Defense*: There is no coverage for the SEC Action and/or other claims under the Policy to the extent they are excluded from coverage by Exclusion F of the Policy, which provides that PartnerRe shall not be liable to make any payment in connection with that portion of any **Claim**, **Investigation** or **Inquiry** "brought about or contributed to by: 1. any deliberately fraudulent or deliberately criminal act or omission by any of the **Insureds**, or 2. any personal profit or financial advantage gained by any of the **Insured Persons** to which they were not legally entitled, as determined by a final non-appealable adjudication in any action or proceeding (other than an action or proceeding initiated by Underwriters to determine coverage under this Policy)[.]"

7

132788006.1

**TYSON & MENDES, LLP**

1    70.    *Tenth Affirmative Defense*: There is no coverage for the SEC Action

2   and/or other claims under the Policy to the extent that disgorgement of profits or awards

3   based upon unjust enrichment are not insurable and indemnifying such claims would be

4   against public policy.

5    71.    *Eleventh Affirmative Defense*: To the extent Wilson suffered any damages,

6   which is denied, such damages should be set-off in an amount to be proven.

7    72.    *Twelfth Affirmative Defense*: To the extent there is any coverage under the

8   Policy for the underlying matters referenced in the Complaint, which PartnerRe denies,

9   the Policy would be excess over any other applicable insurance not specifically written

10   to be excess over the Policy.

11    73.    *Thirteenth Affirmative Defense*: To the extent there is any coverage under

12   the Policy for the underlying matters referenced in the Complaint, which PartnerRe

13   denies, such coverage is subject to the applicable Retention(s) in the Policy.

14                              **ADDITIONAL DEFENSES**

15    Pursuant to Fed. R. Civ. P. 12(b), PartnerRe asserts the following additional (e.g.,

16   non-affirmative) defenses to Plaintiff's Complaint:

17    74.    *First Additional Defense*: In the event there is any covered **Loss**, the total

18   amount at issue must be allocated between covered **Loss** and non-covered amounts.

19    75.    *Second Additional Defense*: The **Defense Costs** sought by Wilson are not

20   reasonable and necessary.

21    76.    *Third Additional Defense*: Wilson failed to satisfy all conditions precedent

22   prior to filing this lawsuit.

23

132788006.1

**TYSON & MENDES, LLP**

77.    *Fourth Additional Defense*: PartnerRe performed in good faith all their obligations under the Policy.

78.    *Fifth Additional Defense*: Wilson's alleged damages were not proximately caused by PartnerRe.

79.    *Sixth Additional Defense*: The claims asserted by Wilson are barred by the doctrines of contingent loss/fortuity/known loss.

80.    *Seventh Additional Defense*: There is no coverage for the underlying matters referenced in the Complaint to the extent that all or part of the allegations in the SEC Action do not constitute **Wrongful Acts**, as defined in the Policy.

81.    *Eighth Additional Defense*: Pursuant to Paragraph G. of Clause IV. LIMIT OF LIABILITY, RETENTIONS, AND ORDER OF PAYMENTS, as amended by endorsement, there is no coverage for Wilson's claim(s) to the extent that he failed to disclose the SEC investigation commencing on or before June 30, 2020, which has as a common nexus any fact, circumstance, situation, transaction or series of facts, circumstances, situations, events or transactions with the SEC Action.

**PRAYER FOR RELIEF**

82.    With respect to Plaintiff's Complaint, PartnerRe requests that the Court enter a judgment in its favor and against Plaintiff as follows:

(a)    entering judgment in favor of PartnerRe;

(b)    awarding PartnerRe its attorneys' fees and costs, as allowable by law; and

(c)    awarding other such relief in favor of PartnerRe that this Court seems just and appropriate.

132788006.1

**TYSON & MENDES, LLP**

## PARTNERRE'S COUNTERCLAIM

PartnerRe Ireland Insurance dba ("PartnerRe"), as and for its Counterclaim against Plaintiff-Counterclaim Defendant Tyler B. Wilson, states as follows:

### PRELIMINARY STATEMENT

1.    The SEC alleged that Plaintiff-Counterclaim Defendant Tyler Wilson, along with his former employers Taronis Technologies, Inc. ("Tech") and Taronis Fuels, Inc. ("Fuels") and former Chief Executive Officer of both companies, Scott D. Mahoney, engaged in a fraudulent scheme to deceive investors and potential investors about Tech's and Fuels' successes by issuing numerous materially false and misleading public statements touting agreements and relationships with customers that did not exist or were exaggerated and releasing false financial statements between approximately January 2019 to March 2020.

2.    As a result, the SEC filed an enforcement action against Tech, Fuels, Wilson, and Mahoney, filed on August 24, 2022 and styled as *Securities and Exchange Commission v. Taronis Technologies, Inc., et al.*, case no. 8:22-cv-01939, in the United States District Court for the Middle District of Florida (the "SEC Action"). A copy of the complaint in the SEC Action is attached as **Exhibit A** (the "SEC Complaint").

3.    In his Complaint in this Court, Wilson now seeks a declaration of coverage under the PartnerRe policy for his defense of the SEC Action, as well as costs, fees, and damages.

4.    Counterclaim Plaintiff PartnerRe seeks a judicial determination in this Counterclaim as to the parties' rights and obligations under the Forge Underwriting

132788006.1

**TYSON & MENDES, LLP**

Limited Advanced Boardroom and Company Protection Policy No. B1724WLS20C237 issued by PartnerRe to Taronis Fuels, Inc. ("Fuels") for the coverage period commencing July 13, 2020 and ending July 13, 2021 (the "Policy") declaring that Wilson is not entitled to coverage under the Policy for indemnity or defense costs in connection with the SEC Action. A copy of the Policy is attached as **Exhibit B**.

5.      Wilson and/or Fuels first became aware of an SEC investigation following receipt of a June 30, 2020 SEC Letter (the "June 30, 2020 Letter"), which ultimately led to the SEC Action filed against Fuels, Wilson, and others.

6.      Despite knowledge of the SEC inquiry and/or investigation, neither Fuels nor Wilson informed PartnerRe prior to the inception of the Policy of the June 30, 2020 Letter or SEC investigation or other facts which could reasonably give rise to a **Claim**,[1] including a **Securities Claim**, against Fuels and its officers and directors.

7.      Fuels and Wilson failed to timely notify PartnerRe of the SEC inquiry and/or investigation pursuant to the Policy's notice provision.

8.      Wilson further misrepresented his knowledge of the SEC investigation, which could reasonably give rise to a **Claim**, including a **Securities Claim**, in  a general warranty letter to PartnerRe dated July 28, 2020 and signed by Wilson, declaring that "no  director, officer, or other proposed insured is aware of any acts, circumstances, incidents, or suspected incidents that reasonably might give rise to a claim or loss under

---

[1] Words appearing in bold print are ascribed the meaning given to them in the Policy, unless otherwise noted.

132788006.1

**TYSON & MENDES, LLP**

the proposed insurance" (the "Warranty Letter").

9.     The SEC Action set forth various causes of action for securities violations against Wilson under Section 17(a) of the Securities Act (Counts I-III); Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (Counts IV-VI); Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder (Count XIII); Exchange Act Rule 13b2-2 (Count XIV); Exchange Act Rule 13a-14(a) (Count XV); Section 304(a) of SOX (Count XVI); and Section 20(a) of the Exchange Act (Count XXII).  The SEC also brought claims for aiding and abetting Fuels' Violations of Section 13(a) of the Exchange Act and Rule 12-b-20 and 13a-13 thereunder (Count VIII); Section 13(b)(2)(a) of the Exchange Act (Count X); and Section 13(b)(2)(b) of the Exchange Act (Count XII).

10.     The SEC Action requests entry of a permanent injunction against Wilson and also disgorgement and prejudgment interest; civil monetary penalties; an officer and director bar; and reimbursement pursuant to SOX Section 304(a)

11.     However, the Policy does not cover Wilson's alleged knowing and/or reckless securities violations to defraud investors and potential investors through misrepresentations about Fuels' financial statements, and thus does not permit him to shift the resulting damages and Defense Costs to his insurer.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties between whom there is controversy are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Counterclaim Defendant Wilson is a citizen of Arizona.

132788006.1

**TYSON & MENDES, LLP**

1       14.      Counterclaim Plaintiff PartnerRe is, and was at the time of this action's

2 filing, a private limited company incorporated in Ireland with its principal place of

3 business in Dublin, Ireland.

4       15.      PartnerRe is therefore a citizen of Ireland for the purposes of determining

5 diversity of citizenship. *See* 28 U.S.C. § 1332(c).

6       16.      Consequently, there is complete diversity of citizenship between

7 Counterclaim Plaintiff PartnerRe and Counterclaim Defendant Wilson. *See* 28 U.S.C. §

8 1332(a)(2).

9       17.      Wilson has indicated that, at least as of the date he filed his complaint, he

10 has incurred in defense of the SEC Action costs in excess of $200,000. Through this

11 action, Wilson seeks to recover those defenses costs already incurred, as well as those

12 defense costs he will incur going forward.

13       18.      Accordingly, the amount in controversy exceeds $75,000.00, exclusive of

14 interests and costs, and the amount in controversy requirement is satisfied.   *See* 28

15 U.S.C. § 1332(a).

16       19.      Venue in this Court is proper in this judicial district and division under 28

17 U.S.C. §1391(b)(3) as Wilson resides in Maricopa County, Arizona.

18                                     **FACTUAL ALLEGATIONS**

19                                        ***The Parties***

20       20.      At relevant times, Counterclaim Defendant Tyler Wilson was a resident of

21 Maricopa County, Arizona and served as a director and/or officer of both Tech and

22 Fuels, allegedly clean technology companies and global producers of renewable and

23

132788006.1

**TYSON & MENDES, LLP**

1  socially responsible fuel products, aimed at delivering environmentally sustainable

2  technology driven alternatives to traditional fossil fuel and carbon-based products.

3      21.    Specifically, at Tech, Wilson was General Counsel from approximately

4  June 2017 to May 6, 2021; Chief Financial Officer from approximately September 1,

5  2019 to May 6, 2021; and Secretary from approximately December 2018 to May 6,

6  2021; and at Fuels, Wilson was General Counsel from approximately 2018 to May 6,

7  2021; Chief Financial Officer from approximately September 1, 2019 to November 4,

8  2020; and Secretary from approximately 2018 to May 6, 2021.

9      22.    Fuels was a wholly-owned subsidiary of Tech until approximately

10  December 5, 2019, when Fuels was spun-off.

11      23.    Thereafter, Tech and Fuels shared the same employees, officers, directors,

12  and offices.

13      24.    Even though Fuels was spun-off, Wilson continued to serve as an officer

14  of both Tech and Fuels.

15      25.    Counterclaim Plaintiff PartnerRe is an insurance company incorporated

16  under the laws of Ireland with a principal place of business in Dublin, Ireland, which

17  issued the Policy to Fuels for the policy period of July 13, 2020 to July 13, 2021.

18                                  ***Fuels' Board Changes***

19      26.    On August 13, 2019, Fuels entered into an indemnification agreement with

20  Wilson (the "Indemnification Agreement") to provide greater indemnification to Wilson

21  than that required by Fuels' bylaws, including a provision recognizing Fuels as the

22  indemnitor of first resort with the primary obligation to advance expenses or provide

23

132788006.1

**TYSON & MENDES, LLP**

1    indemnification to Wilson. A copy of the Indemnification Agreement is attached as

2    **Exhibit C**.

3          27.    According to the Indemnification Agreement, Wilson "d[id] not regard the

4    protection currently provided by the applicable law, the Bylaws, [Fuels'] other

5    governing documents, and available insurance as adequate under the present

6    circumstances, and [Fuels had] determined that Indemnitee [Wilson] . . . may not be

7    willing to serve or continue to serve in such capacities without additional protections."

8    *See* Ex. C at 1.

9          28.    Thereafter, on December 5, 2019, Fuels spun off from Tech, though

10    Wilson remained an officer for both entities.

11          29.    According to Taronis Fuels' May 12, 2021 Form 8-K, Wilson was

12    suspended pending investigation by its Nominating and Corporate Governance

13    Committee.

14          30.    A new Board was appointed thereafter and has been working with the SEC

15    to address ongoing inquiries and document production as part of the SEC investigation

16    commencing on or before June 30, 2020.

17          31.    Upon information and belief, former Fuels Chief Financial Officer Mary

18    Pat Thompson served on the Fuels Board briefly, from November 4, 2020 through her

19    resignation on December 20, 2020 following a dispute with former Board members

20    arising from her discovery of alleged accounting irregularities at Fuels.

21          32.    According to Exhibit 99.1 of Fuels' December 23, 2020 Form 8-K, Ms.

22    Thompson noted that she was "particularly concerned that the Company's senior

23

15

132788006.1

**TYSON & MENDES, LLP**

1  management may have engaged in fraudulent financial reporting before [she] joined the

2  Company as Chief Financial officer last month. After [she] voiced [her] concerns, Scott

3  Mahoney, CEO, promptly terminated [her] employment with the Company."

4          33.     Additionally, Exhibit 99.2 of Fuels' December 23, 2020 Form 8-K filing

5  included the resignation letter of Tobias Welo, a Fuels stockholder, former member of

6  the Board and former CEO of Fuels, which stated that Ms. Thompson "recently

7  exposed several instances in which Mr. Mahoney apparently directed improvements to

8  the Company's cost of goods sold without any substantiation, thereby substantially

9  overstating the Company's gross profits and gross margin in its public filings. Mr.

10  Wilson was aware of many of these actions, which occurred during his time as the

11  Company's CFO."

12  *The SEC Investigation*

13          34.     The SEC investigation began on or before the June 30, 2020 Letter

14  advising that the SEC was conducting an investigation to determine whether violations

15  of federal securities laws had occurred. A copy of the June 30, Letter is attached as

16  **Exhibit D**.

17          35.     Specifically, the June 30, 2020 Letter stated that SEC staff are "conducting

18  an investigation relating to [Taronis Technologies Inc. (FL-04237)] to determine if

19  violations of federal securities laws have occurred." *See* Ex. D, at 1.

20          36.     The June 30, 2020 Letter included instructions for responding and stated,

21  in relevant part, "[f]or the time-period, January 1, 2017 through the date of your

22  response, please produce all documents concerning the following requests . . . ." *Id.* at 7.

23

132788006.1

**TYSON & MENDES, LLP**

37.     The definition of Tech in the June 30, 2020 Letter includes "subsidiaries," and the majority of the time period for the documents requested covers the period when Fuels was a subsidiary of Tech prior to its spin-off on December 5, 2019. *Id.* at 4.

38.     The June 30, 2020 Letter also set forth specific inquiries relating to Fuels (the fuel and gas side of the Taronis business) including, but not limited to:

> 4.     Any and all documents supporting that Taronis Fuel[s] projects to generate in excess of $50 million in revenues in 2020;…
>
> 6.     Any and all documents supporting that Taronis Fuel[s] had revenues of $11 million for the fourth quarter of 2019…"
>
> 7.     Any and all documents supporting that Taronis owns "a patented plasma arc technology that enables two primary end use applications for fuel generation and water decontamination;"
>
> 8.     Any and all documents supporting that Taronis holds "a 7% royalty on the global use of its fuel generation intellectual property;"
>
> 31.    Any and all documents supporting that "[o]n August 21, 2019, [Taronis] was notified by the Nasdaq Capital Market that the Company needed to revisit (sic) the record date for the Company's proposed spin-off of Taronis Fuels, Inc. because Nasdaq is unable to process reverse stock splits while spin-offs are pending[.]"

*Id.* at 7-9.

39.     On August 28, 2020, the SEC entered a non-public order "Directing Private Investigation and Designating Officers to Take Testimony" to Tech (the "Formal Order") regarding Fuels or Tech with the same matter reference number, FL-04237, as the June 30, 2020 Letter. A copy of the Formal Order is attached as **Exhibit E**.

40.     The Formal Order states that the SEC "has information which tends to

17

132788006.1

**TYSON & MENDES, LLP**

1    show" possible violations of Sections 13(a) and 10(b) of the Exchange Act and Section

2    17(a) of the Securities Act, from at least January 2017, by "Taronis, its officers,

3    directors, employees, partners, subsidiaries, and/or affiliates," including:

4            (a)     filing financial statements with the SEC that may have contained

5    false statements or omissions of material fact; and/or

6            (b)     in the offer or sale of certain securities, employing devices,

7    schemes, or artifices to defraud; obtaining money or property by means of untrue

8    statements or omissions of material fact; or engaging in transactions, practices or courses

9    of business which operated, or would operate as a fraud or deceit upon the purchaser.

10       41.     Pursuant to the provisions of Section 20(a) of the Securities Act and

11    Section 21(a) of the Exchange Act, the Formal Order directs that a private investigation

12    be made to determine whether any persons or entities have engaged in, or are about to

13    engage in, any of the reported acts or practices or any similar acts or practices. *See* Ex. E,

14    at 2.

15       42.     Under the time period set forth in the Formal Order, such persons or

16    entities subject of the SEC investigation include Fuels and its officers and directors.

17       43.     On August 31, 2020, Fuels provided a response to the June 30, 2020

18    Letter, stating, among other things, that "Taronis Fuels, Inc. has met its obligations

19    under the document request by searching carefully and thoroughly for everything called

20    for by the request, and sending to the SEC. Scott Mahoney, Tyler Wilson [and] Richard

21    Conz…searched for the responsive documents. Tyler Wilson has reviewed and

22    determined the produced documents were responsive." A copy of the August 31, 2020

23

132788006.1

**TYSON & MENDES, LLP**

1  response is attached as **Exhibit F.**

2      44.    The August 31, 2020 response referenced "produced documents" and

3  specifically referenced "Taronis Fuels, Inc." *See* Ex. F at 2.

4      45.    On December 14, 2020, pursuant to the Formal Order, the SEC sent Tech

5  c/o Tyler Wilson, General Counsel, under the same matter reference number, FL-04237,

6  a subpoena requiring Tech to produce responsive documents to the SEC by January 11,

7  2021. A copy of the December 14, 2020 subpoena is attached as **Exhibit G**.

8      46.    This subpoena included a "Documents to be Produced" section, similar to

9  the June 30, 2020 Letter, with fifty-one requests pertaining to the time period of January

10  1, 2017 through the date of Mr. Wilson's response and included similar inquiries

11  regarding Fuels' reported revenues for the fourth quarter of 2019 of $11 million, and

12  projected income of $50 million in revenues for 2020. *See* Ex. G.

13      47.    On January 7, 2021, Wilson replied to the December 14, 2020 subpoena,

14  on behalf of Tech, with a cover letter and documents advising that Fuels had spun-off

15  from Tech on December 5, 2019 and was a separate public company with no

16  relationship to its former parent company.

17      48.    The SEC investigation—to date—has continued against both Tech and

18  Fuels, under the same caption, and with the same reference number, FL-04237.

19      49.    On January 11, 2021, pursuant to the Formal Order, the SEC sent a

20  subpoena for documents to Fuels, c/o Tyler Wilson, General Counsel, with the same

21  reference, "Re: Taronis Technologies, Inc., (FL-04237). The body of letter states that

22  "the enclosed subpoena requires *Taronis Fuels* to produce documents to the SEC." A

23

132788006.1

**TYSON & MENDES, LLP**

1    copy of the January 11, 2021 subpoena is attached as **Exhibit H**.

2        50.    As with prior SEC investigation documents with reference number FL-

3    04237, the definition of "Taronis" includes parents, subsidiaries, affiliates, predecessors,

4    successors, officers, directors. *See* Ex. H.

5        51.    The January 11, 2021 letter included a "Documents to be Produced"

6    section, similar to the June 30, 2020 Letter and December 14, 2020 subpoena, with

7    twenty-one (21) requests seeking responses relevant to Fuels and pertaining to the time

8    period of January 1, 2019 to present, including documents identifying Fuels' sales and

9    revenues during the relevant period and supporting projected revenue in 2020 in excess

10    of $50 million. *See id.*

11        52.    On January 13, 2021, the SEC issued a letter to Fuels c/o Tyler Wilson,

12    General Counsel, again with the same reference, FL-04237, advising that deficiencies

13    existed in Fuels' previous productions to the SEC in response to the June 30, 2020 Letter

14    and the December 14, 2020 subpoena, insofar as Wilson failed to produce "Native" files

15    for all emails and failed to produce metadata for all spreadsheets or other electronic

16    documents.

17        53.    On January 19, 2021, Wilson responded, on behalf of Fuels, on Fuels

18    letterhead and provided the requested documentation under the same reference (FL-

19    04237).

20        54.    On February 12, 2021, pursuant to the Formal Order, the SEC sent Fuels

21    c/o Tyler Wilson, General Counsel, with the same reference "Re: Taronis Technologies,

22    Inc. (FL-04237)," a subpoena for additional documents (15 additional requests)

23

132788006.1

**TYSON & MENDES, LLP**

1  requiring Fuels to produce the documents to the SEC by March 5, 2021. A copy of the

2  February 12, 2021 subpoena is attached as **Exhibit I**.

3       55.     On or about February 2021, Wilson and Mahoney first disclosed the

4  existence of the SEC investigation to the other Fuels board members.

5       56.     Thereafter, the SEC issued additional subpoenas to Fuels, Wilson, and

6  various Fuels officers, directors, and employees, including but not limited to (a) former

7  Fuels Chief Financial Officer Mary Pat Thompson; (b) former Fuels Vice President of

8  Engineering, Research, & Development Richard Conz; (c) former Fuels director and

9  officer Kevin Pollack; and (d) former Fuels director and officer Peter Molloy, in

10  connection with the same matter reference, FL-04237.

11       57.     On May 11, 2021, Fuels for the first time notified PartnerRe of the

12  ongoing SEC investigation—almost a year after receipt of the June 30, 2020 Letter and

13  almost nine months after the August 28, 2020 Formal Order—with tender of three

14  subpoenas for documents dated December 14, 2020, January 11, 2021, and February 12,

15  2021.

16       58.     On May 26, 2021, Wilson retained legal counsel in relation to the SEC

17  investigation.

18       59.     On June 3, 2021, Wilson's counsel made written demands upon Fuels for

19  information and indemnification and to put Fuels' insurer on notice of his demand and

20  indicated that the SEC reached out to Wilson and "advised that it intends to subpoena

21  Mr. Wilson for testimony related to Taronis Fuels."

22       60.     Notice of Wilson's correspondence regarding indemnification for the SEC

23

132788006.1

**TYSON & MENDES, LLP**

1    investigation was first provided to PartnerRe on August 4, 2021—almost fourteen

2    months after the start of the SEC investigation and almost a year after the Formal Order.

3                                    *The Underlying SEC Action*

4           61.    On August 24, 2022, the SEC filed an enforcement action seeking

5    injunctive relief and other relief against Tech, Fuels, Mahoney, and Wilson in the U.S.

6    District Court for the Middle District of Florida.

7           62.    The SEC Complaint alleges a myriad of intentional and fraudulent conduct

8    on the part of the four defendants, including Wilson, and in pertinent part, alleges

9    securities violations with the intent to defraud investors and potential investors through

10   misrepresentations about Fuels' financial statements. *See generally* Ex. A.

11          63.    According to the SEC Complaint, Fuels' financial statements for the

12   quarterly periods ending June 30, 2020 and September 30, 2020 improperly recognized

13   revenue as a result of intentional or severely reckless incorrect application of Generally

14   Accepted Accounting Principles. *Id.* at ¶ 2.

15          64.    Wilson—as General Counsel, Chief Financial Officer, and Secretary of

16   Tech and Fuels—is alleged to have "knowingly or recklessly engaged in [an] improper

17   accounting scheme and falsified Taronis Fuels' books and records by creating fake and

18   backdated orders, which resulted in Taronis Fuels improperly recognizing this revenue."

19   *Id.* at ¶ 2.

20          65.    Importantly, the allegations against Wilson pertain to the time period from

21   "approximately April 2020 to November 2020"—indicating that the conduct occurred

22   prior to the inception of the policy and continued thereafter. *Id.* at ¶ 2.

23

132788006.1

**TYSON & MENDES, LLP**

66.     In particular, Wilson is alleged to have "improperly moved a number of Taronis Tech's purported assets to Taronis Fuels and, in the quarterly periods for Q2 2020 and Q3 2020, in which Taronis Fuels improperly recognized revenue due to an incorrect application of GAAP and improperly reduced COGS without substantiation, with a material impact on Taronis Fuels' financial statements." *Id.* at ¶ 69.

67.     Examples of the improper transfer of assets between Tech and Fuels, as committed by Wilson, include:

(a)     Wilson improperly moving and recording Tech assets as Fuel assets on Fuels' 2019 Form 10-K [*id.* at ¶¶ 70-71];

(b)     Wilson faking the sale of a $3 million 300KW Venturi unit from Fuels to Tech to improve Fuels' gross margins for the quarter in April 2020 [*id.* at ¶¶ 72-80];

(c)     Fuels falsely recognizing $2.3 million for Turkish units sales in Fuels' Q3 2020 Form 10-Q signed by Mahoney and Wilson and filed with the Commission on November 19, 2020 [*id.* at ¶¶ 81-97]; and

(d)     Mahoney and Wilson knowingly and improperly reducing Fuels' COGS without substantiation, resulting in Fuels understating costs and increasing gross profit by approximately $2.72 million [*id.* at ¶102-109].

68.     On August 18, 2020, contrary to Fuels' and Wilson's receipt of the June 30, 2020 Letter, Mahoney and Wilson signed a letter to the Audit Firm for Q2 2020 falsely stating that they had "no knowledge of any fraud or suspected fraud affecting the Company"; that there had been "no material transactions that ha[d] not been properly

132788006.1

**TYSON & MENDES, LLP**

1    recorded in the accounting records underlying the interim financial statements"; and that

2    there had been no SEC communications or inquiries "concerning potential noncompliance

3    with, or deficiencies in financial reporting practices nor any other matters that could

4    have [a] material adverse effect on the financial statements." *Id.* at ¶ 79 (cleaned up).

5        69.    Wilson misrepresented Fuels' financial statements as Chief Financial

6    Officer and "acted as an accountant when, among other things, he acted in his CFO

7    capacity, reviewed accounting entries, reviewed a revenue recognition memo and drafted

8    supporting documentation for same, and supervised Taronis Fuels' accounting staff." *Id.*

9    at ¶ 67.

10        70.    Wilson allegedly benefitted from the accounting scheme through Fuels'

11    bonus performance matrix, which awarded bonuses to executives for meeting certain

12    revenue and sales targets. *Id.* at ¶ 68.

13        71.    After a proxy fight in April 2021, Wilson and a majority of Fuels' board

14    were replaced, and new management filed a Form 8-K to correct potential errors in

15    reported revenue, COGS, COR, and gross income in financial statements for the year

16    ended December 31, 2019 and for each of the interim quarterly periods in fiscal 2020,

17    i.e. during Wilson's tenure as Fuels' CFO. *Id.* at ¶¶ 111-12.

18        72.    The SEC alleged that "all of Taronis Tech's and Taronis Fuels' false and

19    misleading statements and omissions, the fraudulent accounting scheme to improve

20    Taronis Fuels' financial statements, including the improper revenue recognition and

21    COGS reductions, and Taronis Fuels' lack of internal controls for use of the proceeds

22    from the CARES Act loan . . . individually and in the aggregate, were material to their

23

**TYSON & MENDES, LLP**

1    respective companies." *Id.* at ¶ 124.

2        73.    The SEC Action alleged causes of action against Wilson for Violations of

3    Section 17(a)(1) of the Securities Act (Count I); Violations of Section 17(a)(2) of the

4    Securities Act (Count II); Violations of Section 17(a)(3) of the Securities Act (Count

5    III); Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) thereunder

6    (Count IV); Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)

7    thereunder (Count V); Violations of Section 10(b) of the Exchange Act and Rule 10-

8    b5(c) thereunder (Count VI); aiding and abetting Fuels' Violations of Section 13(a) of

9    the Exchange Act and Rule 12-b-20 and 13a-13 thereunder (Count VIII); aiding and

10   abetting Fuels' Violations of Section 13(b)(2)(a) of the Exchange Act (Count X); aiding

11   and abetting Fuels' Violations of Section 13(b)(2)(b) of the Exchange Act (Count XII);

12   Violations of Section 13(b)(5) of the Exchange Act and Rule 13b2-1 thereunder (Count

13   XIII); Violations of Exchange Act Rule 13b2-2 (Count XIV); Violations of Exchange

14   Act Rule 13a-14(a) (Count XV); Violations of Section 304(a) of SOX (Count XVI); and

15   Control Person Liability as to Mahoney and Wilson under Section 20(a) of the Exchange

16   Act for Taronis Fuels' Violations of Sections 10(b), 13(a), 13(b)(2)(A), and 13(b)(2)(B)

17   of the Exchange Act and Rules 10b-5, 12b-20, and 13a-13 thereunder (Count XXII).

18       74.    The SEC Action requests entry of a permanent injunction against Wilson

19   and also disgorgement and prejudgment interest; civil monetary penalties; an officer and

20   director bar; and reimbursement pursuant to SOX Section 304(a).

21                              ***The Insurance Policy***

22       75.    Fuels submitted an application for directors and officers company liability

23                                      25

**TYSON & MENDES, LLP**

insurance on July 13, 2020, signed by Mahoney (the "Application"). A copy of the

Application is attached as **Exhibit J**.

76.    Therein, Fuels responded "No" to Question 13 of the Application, which

states:

> Does the Parent Company, its Subsidiaries or any directors, officers,
> or any other persons proposed for this insurance have any
> knowledge or information of any error, misstatement, misleading
> statement, act, omission, neglect, or breach of duty which could
> reasonably give rise to a claim, including a securities claim, against
> them?

Ex. J at 2.

77.    Question 13 of the Application also provides:

> It is agreed that this policy shall not afford coverage with respect to
> any claim arising from any such error, misstatement, misleading
> statement, act, omission, neglect, or breach of duty to the extent  the
> claim is against an **Insured** who knew of such error, misstatement,
> misleading statement, act, omission, neglect or breach of duty prior
> to issuance of the proposed policy.

*Id.*

78.    On July 28, 2020, Wilson sent a general warranty letter to PartnerRe

signed by Wilson, declaring that "no  director, officer, or other proposed insured is

aware of any acts, circumstances, incidents, or suspected incidents that reasonably might

give rise to a claim or loss under the proposed insurance." A copy of the Warranty Letter

is attached as **Exhibit K**.

79.    PartnerRe issued the Advanced Boardroom and Company Protection

Policy No. B1724WLS20C237 to **Parent Company** Fuels for the **Policy Period** of July

13, 2020 to July 13, 2021.

132788006.1

**TYSON & MENDES, LLP**

80.     The Policy provides $2 million coverage to the **Company** and **Insured Persons** under Insuring Clauses I.A. (**Insured Persons**).

81.     The Declarations to the Policy, amended by endorsement, provide, in relevant part, as follows:

> THIS IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY **CLAIM** FIRST MADE, ANY **INVESTIGATION** FIRST COMMENCED AND ANY **INQUIRY** FIRST REPORTED AND ANY **BOOKS AND RECORDS DEMAND** FIRST MADE DURING THE **POLICY PERIOD** PROVIDED:
>
> (1) SUCH **CLAIM** OR **INVESTIGATION** IS REPORTED TO UNDERWRITERS IN ACCORDANCE WITH THE TERMS OF CLAUSE VI.A; AND
>
> (2) SUCH **INQUIRY** IS FIRST RECEIVED BY THE **INSURED PERSONS** ON OR AFTER THE DATE SET FORTH IN ITEM J. OF THE DECLARATIONS; AND
>
> (3) SUCH **BOOKS AND RECORDS DEMAND** IS REPORTED TO UNDERWRITERS IN ACCORDANCE WITH THE TERMS OF CLAUSE VI.B.
>
> AMOUNTS INCURRED AS **COSTS**, **CHARGES AND EXPENSES** AND **INQUIRY COSTS** SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY OR THE SUBLIMIT OF LIABILITY, IF APPLICABLE, AND ARE SUBJECT TO THE RETENTIONS. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY UNDERWRITERS TO DEFEND ANY OF THE **INSUREDS**.
>
> ***

82.     Section I., **INSURING CLAUSES** of the Policy, provides:

> A.     Underwriters shall pay on behalf of the **Insured Persons**:
>
>> 1.     **Loss** resulting from any **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act**; or

27

132788006.1

**TYSON & MENDES, LLP**

2.     **Loss** resulting from any **Investigation** of the **Insured Persons** first commenced during the **Policy Period**; or

3.     **Inquiry Costs** resulting from any **Inquiry** first reported to Underwriters during the **Policy Period** provided such **Inquiry** is first received by the **Insured Persons** on or after the date set forth in Item J. of the Declarations [July 13, 2020]

83.     Pursuant to *Section II. **DEFINITIONS***, the Policy contains the following definitions, in relevant part:

A.     Application, as amended by Endorsement (01/14 LSW4008), means:

1.     the application for this Policy including any materials submitted therewith, and

2.     any public documents filed by the **Company** with the Securities and Exchange Commission during the twelve (12) month period prior to the inception date of this Policy, all of which shall be deemed part of this Policy, as if physically attached

B.     **Claim** means:

1.     any written demand for monetary damages, non-monetary relief, injunctive relief or other relief against any of the **Insureds**, or any civil, criminal, administrative, regulatory, arbitration or mediation proceeding or other alternative dispute resolution process initiated against any of the **Insureds**, including:…

I.     **Inquiry**, as amended pursuant to Endorsement LSW 4169, includes:

1.     a request by the **Company** or a **Regulatory Authority** for any of the **Insured Persons** to appear for an interview or meeting  or to provide a sworn testimony or to produce documents in connection with: (a) an inquiry or investigation of any of the **Insureds** by a **Regulatory Authority**, or (b) a **Security  Holder Demand**, or

***

28

**TYSON & MENDES, LLP**

3.     in respect of Insuring Clause 1.A only, a request by or on behalf of a party to any litigation, arbitration or other type of proceeding against the **Company** for any of the **Insured Persons** to appear for an interview or meeting or to provide a sworn testimony or to produce documents in connection with such litigation, arbitration or proceeding, regarding such **Insured Persons** capacity as such or the business of the **Company**, but shall not include any routine or     regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulatory entity.

N.     **Investigation** means:

1.     any formal investigation of any of the **Insured Persons** by a

10.     **Regulatory Authority**:

(a)     once any such **Insured Persons** are identified in writing by such **Regulatory Authority** as a person against whom a **Claim** may be brought, including without limitation receipt of a target letter, or

(b)     after the service of a subpoena or other similar written request compelling witness testimony or document production upon any such **Insured Persons**, [or]

2.     in respect of Insuring Clause I.A. only, any informal investigation of any of the **Insured Persons** by the Securities and Exchange Commission or any similar federal, state, local or foreign governmental body with jurisdiction over violations of securities laws after such **Insured Person** becomes aware that they are the subject of such investigation and, as a consequence of such investigation, retains legal counsel.

*Applicable Provisions and Exclusions under the Policy*

84.     Clause **VI. NOTIFICATION**, as amended by endorsement, provides:

C.     If the **Insureds**:

1.     become aware of a specific fact, circumstance or situation which could reasonably give rise to a **Claim** or **Investigation**, or

132788006.1

**TYSON & MENDES, LLP**

2.     receive any request to toll a period or statute of limitation which may be applicable to any **Claim** or **Investigation**,

and if the **Insureds** during the **Policy Period** give written notice to Underwriters of:

(a)     the specific the request to toll a period or statute of limitation;

(b)     the consequences which have resulted or may result therefrom; and

(c)     the circumstances by which the **Insureds** first became aware thereof,

then any **Claim** or **Investigation** made subsequently arising out of such the request to toll a period or statute of limitation shall be deemed for the purposes of this Policy to have been made or commenced at the time such notice was first given.

D.     Notice to Underwriters provided for in Clause VII. shall only be deemed effective if given to the firm shown under Item I. of the Declarations.

85.     Section III. EXCLUSIONS, B. provides in relevant part: Underwriters shall not be liable to make any payment in connection with that portion of any **Claim**, **Investigation** or **Inquiry**:

B.     based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

3.     any written demand, suit, investigation or other proceeding pending, or order, decree or judgment entered, against any **Insured** prior to the date set forth in Item K. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein;

86.     Item K. of the Declarations sets forth the "Prior and Pending Litigation Date" of July 13, 2020.

87.     Clause III. EXCLUSIONS, F. states PartnerRe will not be liable to make

30

132788006.1

**TYSON & MENDES, LLP**

any payment in connection with that portion of any **Claim**, **Investigation** or **Inquiry**:

      F.    brought about or contributed to by:

           1.    any deliberately fraudulent or deliberately criminal act or omission by any of the **Insureds**, or

           2.    any personal profit or financial advantage gained by any of the **Insured Persons** to which they were not legally entitled, as determined by a final non-appealable adjudication in any action or proceeding (other than an action or proceeding initiated by Underwriters to determine coverage under this Policy)[.]

### COUNT ONE

### Declaratory Judgment that Wilson is Not Entitled to Coverage

PartnerRe repeats and reasserts the allegations set forth in paragraphs 1 through 87 of its Counterclaim as fully set forth herein.

88.    A justiciable controversy exists between PartnerRe and Wilson regarding coverage under the Policy.

89.    The Application provides that the Policy "shall not afford coverage with respect to any claim arising from any such error, misstatement, misleading statement, act, omission, neglect, or breach of duty to the extent the claim is against an **Insured** who knew of such error, misstatement, misleading statement, act, omission, neglect or breach of duty prior to issuance of the proposed policy." *See* Ex. J.

90.    Pursuant to Clause VIII. General Conditions, A. Representations and Severability as amended by Endorsement (01/14 LSW4053), the statements in the Application are Fuels' representations and the Policy was issued in reliance upon the

132788006.1

**TYSON & MENDES, LLP**

1  truth of such representations.

2       91.    The Application warrants on behalf of Fuels' directors and officers.

3       92.    Fuels misrepresented its answer to Question 13 of the Application asking,

4  "Does the Parent Company, its Subsidiaries or any directors, officers, or any other

5  persons proposed for this insurance have any knowledge or information of any error,

6  misstatement, misleading statement, act, omission, neglect, or breach of duty which

7  could reasonably give rise to a claim, including a securities claim, against them?" by

8  answering "No." *See* Ex. J.

9       93.    The Application omits reference to the SEC investigation and the June 30,

10  2020 Letter.

11       94.    The omission of the SEC investigation in the Application materially

12  affected the acceptance of the risk or the hazard assumed by PartnerRe under this Policy.

13       95.    Wilson made misrepresentations in the July 28, 2020 Warranty Letter to

14  PartnerRe signed by Wilson as Fuels' CFO, Secretary, Treasurer & General Counsel,

15  declaring that "no  director, officer, or other proposed insured is aware of any acts,

16  circumstances, incidents, or suspected incidents that reasonably might give rise to a

17  claim or loss under the proposed insurance." *See* Ex. K.

18       96.    The June 30, 2020 Letter was a written notice and request for

19  documentation and information from Fuels in relation to an SEC investigation to

20  determine if violations of federal securities laws had occurred.

21       97.    Wilson was actively involved in the production of documents to the SEC

22  in response to the June 30, 2020 Letter.

23

132788006.1

**TYSON & MENDES, LLP**

98.     Wilson and other Insureds under the Policy had actual knowledge of the SEC investigation, which was initiated prior to the inception of the Policy and the Prior and Pending Litigation Date of July 13, 2020 set forth in Item K of the Declarations.

99.     With these facts, a reasonable person would not have made the representations made in the Application and in the Warranty Letter.

100.     PartnerRe is thus not liable for payment in connection with the SEC Action based upon Wilson's and/or other Insureds' knowledge of SEC's investigation against Fuels and omission of same on the Application.

101.     Under Policy Exclusion B, PartnerRe is not liable for payment in connection with the SEC Action based upon the SEC's investigation against Fuels commencing on or before June 30, 2020—prior to Prior and Pending Litigation Date of July 13, 2020.

102.     PartnerRe is not liable for payment in connection with the SEC Action based upon Wilson's misrepresentations in the Warranty Letter.

103.     Further, Fuels did not provide notice of the SEC investigation until May 11, 2021—almost a year after the June 30, 2020 Letter commencing the SEC investigation.

104.     During such time, counsel was actively engaged on behalf of Fuels and **Insured Persons**, including Wilson, to address and respond to the SEC's requests for testimony and documentation.

105.     PartnerRe was not aware of Wilson's indemnification demand of Fuels until August 4, 2021—almost fourteen months after the start of the SEC investigation

33

**TYSON & MENDES, LLP**

1    and almost a year after the Formal Order.

2         106.    During such time, Wilson was actively involved in the production of

3    documents to the SEC in response to the June 30, 2020 Letter, as evidenced by the

4    August 31, 2020 response letter providing that "Wilson [and others] searched for the

5    responsive documents. Tyler Wilson has reviewed and determined the produced

6    documents were responsive." *See* Ex. F at 2.

7         107.    PartnerRe is thus not liable for payment in connection with the SEC

8    Action based upon late notice because PartnerRe was not notified "as soon as

9    practicable" despite Wilson, as General Counsel and CFO, being aware of and actively

10   involved in the SEC investigation.

11        108.    Allegations in the SEC Complaint as well as resignation letters included as

12   Exhibits 99.1 and 99.2 of Fuels' December 23, 2020 Form 8-K detail findings that

13   reflect that Wilson was engaged in fraudulent financial reporting activity which

14   substantially overstated Fuels' gross profits and gross margin in its public filings.

15        109.    Thus, under Policy Exclusion F, PartnerRe is not liable for payment in

16   connection with the SEC Action to the extent the SEC investigation was brought about

17   or contributed to by deliberately fraudulent or deliberately criminal act or omission by

18   an **Insured** or for the personal profit or financial advantage gained by any **Insured**

19   **Persons** for which they were not legally entitled.

20        110.    For all the foregoing reasons, the Court should enter a declaratory

21   judgment determining that Wilson is not entitled to coverage under the Policy in

22   connection with the SEC Action.

23

132788006.1

**TYSON & MENDES, LLP**

1

### PRAYER FOR RELIEF

2      111.    Counterclaim Plaintiff PartnerRe requests that the Court enter judgment in

3  its favor and against Wilson as follows:

4            (a)      A judgment declaring that Wilson is not entitled to defense or

5  indemnity from PartnerRe in connection with the SEC Action;

6            (b)      that PartnerRe be awarded its fees and costs, as well as pre-

7  judgment and post-judgment interest, pursuant to any applicable rule or statute; and

8            (c)      that the Court grant such other and further relief as deemed just and

9  proper.

10      DATED this 2nd day of May, 2023.

11                                  TYSON & MENDES, LLP

12
                                   By: */s/ Lynn M. Allen*_____
13                                     Lynn M. Allen
                                       *Attorneys for Defendant PartnerRe*
14                                     *Ireland Insurance dac*

15

16

17

18

19

20

21

22

23                                          35

**TYSON & MENDES, LLP**

1

### <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on May 2, 2023, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

3    Notice of Electronic Filing to the following CM/ECF Registrants:

4    Troy B. Froderman
FR LAW GROUP, PLLC

5    4745 N. 7th Street
Suite 310

6    Phoenix, AZ 85014
Tfroderman@frlawgroup.com

7    *Attorney for Plaintiff*

8    By: */s/ Victoria Sakakibara*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

132788006.1