**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tyler B Wilson, | No. CV-23-00738-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| PartnerRe Ireland Insurance dac, a foreign corporation, | |
| Defendant. | |

Plaintiff Tyler Wilson asserts claims for breach of contract, bad faith, and declaratory judgment against Defendant PartnerRe Ireland Insurance dac ("PartnerRe"). Doc. 1-3 at 2-7. The parties cross-move for summary judgment. Docs. 129, 132. After thorough briefing and detailed oral argument, the Court will deny the cross-motions.

**I.    Background.**

Plaintiff served as general counsel of Taronis Fuels, Inc. ("Fuels") from September 2019 through May 2021. Docs. 133 ¶ 53, 141 ¶ 52. Fuels was a wholly owned subsidiary of Taronis Technologies, Inc. ("Tech") until December 5, 2019, when it spun off as a publicly owned company. Docs. 132 at 6, 133 ¶ 55, 141 ¶ 55.

Defendant PartnerRe issued a Directors and Officers Insurance Policy to Fuels for the **Policy Period** of July 13, 2020 through July 13, 2021 ("Policy").[1] Docs. 130 ¶ 1, 141

---

[1] Capitalized and bolded terms reflect defined terms in the Policy – terms which are also capitalized and bolded in the text of the Policy. *See* Doc. 129-4 at 16-85.

¶ 1. Plaintiff is an **Insured Person** under the Policy. Docs. 129-4 at 56-57, 133 ¶¶ 54, 57, 141 ¶¶ 54, 57. The Policy provides coverage under Insuring Clause I.A. for **Loss** of **Insured Persons** resulting from a **Claim** first made during the **Policy Period**, and under Insuring Clause I.B. for **Loss** paid by the **Company** (Fuels) as indemnification to an **Insured Person** for a **Claim** first made during the **Policy Period**. Doc. 129-4 at 51. The word **Claim** is defined to include any civil or regulatory proceeding commenced against an **Insured** for monetary damages or other relief. *Id.* at 52.

In May 2021 – within the **Policy Period** – Plaintiff received notice that the Securities and Exchange Commission ("SEC") wanted him to give sworn testimony in connection with an SEC investigation. Doc. 133 ¶ 61.[2] Plaintiff retained attorney Adam Schwartz and his law firm to represent Plaintiff in the investigation. *Id.* On June 3, 2021, Schwartz asked Fuels to demand insurance coverage from Defendant for costs of the investigation. Doc. 133 ¶ 62.

The SEC issued a subpoena to Plaintiff in September 2021 and filed a civil enforcement action against him in August 2022. Docs. 130 ¶¶ 42, 50, 133 ¶¶ 42, 50. Defendant ultimately denied coverage for Plaintiff's costs incurred in the SEC action and investigation. Docs. 130 ¶ 35, 133 ¶ 35. Because of Defendant's refusal, Plaintiff contends he was unable to continue paying Schwartz and was forced to reach an unfavorable settlement with the SEC that has caused millions of dollars in damages. Doc. 132 at 8. He sues Defendant for breach of the insurance contract and the tort of bad faith, and seeks a declaratory judgment that he is entitled to coverage under the Policy. Doc. 1-3 ¶¶ 27-59. Defendant brings a counterclaim for a declaratory judgment. Doc. 4 ¶¶ 87-11.

## II.    Summary Judgment Standard.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court addressing a summary judgment motion must construe the evidence and draw

---

[2] Where Defendant has stated evidentiary objections to Plaintiff's Statement of Facts that do not contradict the essential elements of Plaintiff's assertion, the Court cites Plaintiff's assertion for background purposes. *See, e.g.*, Doc. 141 ¶¶ 61-62. The citations are not dispositive in this order and are not intended to resolve any factual dispute for trial.

justifiable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Breach of Contract.**

Both parties move for summary judgment on Plaintiff's claim for breach of the Policy, arguing that undisputed facts show they are entitled to judgment as a matter of law. Defendant does not dispute that SEC investigations and lawsuits are the kinds of proceedings covered by the Policy, but contends that coverage in this case is foreclosed by the Policy's exclusions. Doc. 129 at 6. The exclusion Defendant primarily relied on when denying coverage, and at issue in these summary judgment motions, is found in paragraph III.B.3 of the Policy:

> Underwriters shall not be liable to make any payment in connection with that portion of any **Claim**, **Investigation** or **Inquiry**: . . . based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving: . . . any written demand, suit, investigation or other proceeding pending, or order, decree or judgment entered, against any **Insured** prior to the date set forth in Item K. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein[.]

Doc. 129-4 at 63-64. The key question in this case is whether Plaintiff submitted a claim for insurance coverage that arose out of an "investigation . . . against any **Insured**" that commenced before July 13, 2020, the start of the Policy's one-year **Policy Period**.

Each party's summary judgment motion focuses on a letter the SEC sent to Tech, the former parent of Fuels, on June 30, 2020, before the start of the **Policy Period** (the "SEC Letter"). Doc. 129-1 at 70. Defendant claims the SEC Letter shows as a matter of undisputed fact that the SEC had commenced an investigation against an **Insured** (Fuels and/or its CEO Scott Mahoney) before the **Policy Period** began, and because Plaintiff's claim for insurance coverage ultimately arose out of this investigation, the claim is excluded by paragraph III.B.3. Doc. 129 at 16-19. Plaintiff contends the SEC Letter shows

just the opposite – that as a matter of undisputed fact, the investigation before the **Policy Period** focused solely on Tech, which is not an **Insured** under the Policy, and the exclusion therefore does not apply. Doc. 132 at 10-12. The Court disagrees with both parties' claim that facts reflected in the SEC letter are undisputed.

### A.    Defendant's Motion.

The SEC Letter does not establish as a matter of undisputed fact that the SEC was investigating an **Insured** – as required by the III.B.3 exclusion – on June 30, 2020. The letter was addressed specifically to Tech, which was not an **Insured** under the Policy. The letter said the SEC "is conducting an investigation relating to the above-referenced matter to determine if violations of the federal securities laws have occurred." Doc. 129-1 at 70. The "above-referenced matter" was Tech – "Taronis Technologies, Inc. (FL-04237)." *Id.* The letter asked Tech to voluntarily produce documents described in an attachment and asked that Tech CEO Scott Mahoney voluntarily give testimony under oath. *Id.*

Defendant relies heavily on the attachment to the letter. The letter defined Tech (Taronis Technologies, Inc.) simply as "Taronis." *Id.* The attachment then described the documents Tech was being asked to produce to the SEC, explaining: "*As used in this document request* . . . Taronis" includes affiliates, successors, officers, and employees, among others. *Id.* at 73 (emphasis added). Because Fuels was a successor to Tech and Mahoney was an officer of Tech, Defendant contends this broad definition shows they were both subjects of the SEC investigation. Doc. 129 at 16-18. And because they were also **Insureds** under the Policy (Mahoney was also an officer of Fuels and was covered by the Policy), Defendant contends the SEC Letter reflects a pre-**Policy Period** "investigation . . . against any **Insured**" within the meaning of the III.B.3 exclusion. *Id.* at 19.

These facts are not undisputed. The broad definition in the attachment to the SEC Letter was for "this document request." *Id.* at 73. It did not purport to define the scope of the investigation. And the fact that an SEC letter addressed solely to Tech sought documents related to a broad category of entities and persons does not establish as a matter of undisputed fact that the SEC's investigation was "against" all those entities and persons

as required by the exclusion.  It is entirely possible that the SEC was focused on Tech alone and sought documents related to other persons and entities involved in Tech transactions it was investigating.

Defendant relies on other evidence to support its argument: (1) the document request specially sought several categories of documents related to Fuels, (2) emails between Plaintiff and the SEC after the start of the **Policy Period** suggested the investigation included Fuels, (3) Plaintiff and Fuels later stated in public filings that the SEC investigation against Fuels started in June 2020, and (4) the investigation's reference number in the SEC Letter (FL-04237) was used in the SEC's later subpoena of Plaintiff and in other proceedings.  Doc. 129 at 17-19.  While this additional evidence might support a reasonable inference that Fuels and Plaintiff were subjects of the SEC investigation in June 2020, it does not establish that position as a matter of undisputed fact.  And in ruling on Defendant's summary judgment motion, the Court must draw reasonable inferences in favor of Plaintiff.  *Matsushita*, 475 U.S. at 587.

### B.    Plaintiff's Cross-Motion.

#### 1.    Undisputed Facts.

Nor does the SEC Letter conclusively establish that there was <u>not</u> an investigation pending against an **Insured** on June 30, 2020.  Plaintiff argues that the SEC Letter was directed solely to Tech and that Fuels was a separate, publicly traded company on June 30, 2020.  Doc. 132 at 11.  He argues the SEC recognized the separateness of Tech and Fuels as shown when the SEC sent a separate subpoena to Fuels on January 11, 2021, during the **Policy Period**.  *Id.* at 12.  He notes that Mahoney was the CEO of both Tech and Fuels in June 2020, showing that the SEC's interest in Mahoney's testimony did not necessarily mean there was a focus on Fuels.  *Id.*  These facts support Plaintiff's position, but they do not establish as an undisputed fact that there was no SEC investigation pending against Fuels or Mahoney in June 2020.

Defendant bears the burden of proving at trial that the III.B.3 exclusion applies – that there was an investigation pending against Fuels or Mahoney before the start of the

**Policy Period**.  *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984); *Int'l Paper Co. v. Cont'l Cas. Co.*, 320 N.E.2d 619, 622 (N.Y. 1974) ("The insurer is cloaked with the burden of proving that the incident and claim thereunder came within the exclusions of the policy.").  Plaintiff would be entitled to summary judgment now if Defendant had come forward with no evidence to support this burden, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), but as noted above, Defendant identifies several items of evidence that support its position that the June 2020 investigation included Fuels and Mahoney, giving rise to a factual dispute.  A jury must resolve this dispute.

<b>2.      Construction of the Exclusion.</b>

The Policy is governed by New York law.  Doc. 129-4 at 18.  Plaintiff notes that New York courts construe insurance exclusions narrowly, and argues that a narrow construction of III.B.3 requires the Court to conclude that it does not apply to his claim.  Doc. 132 at 18-20.

Plaintiff notes that the Policy specifically defines **Investigation** to include writings directed to **Insured Persons** by a regulatory authority (such as a target letter); subpoenas served on **Insured Persons** by such an authority; and other regulatory actions that cause an **Insured Person** to retain counsel.  *See* Doc. 129-4 at 57-58.  Because Defendant does not allege that any of these events occurred in this case before the **Policy Period**, and because the III.B.3 exclusion uses the undefined word "investigation" in the key language at issue in this case, Plaintiff contends that the exclusion is ambiguous and must be construed narrowly, in Plaintiff's favor.  Doc. 132 at 20.  He contends that the Policy's use of two different forms of the same word – one defined and the other not – creates uncertainty that should be construed against Defendant.  *Id.*  He suggests the Court adopt the defined version of **Investigation** as the Policy's meaning and hold that no such **Investigation** occurred before the **Policy Period**.  *Id.* at 17-20.

But as Defendant notes, courts permit insurers to use both defined and undefined versions of the same word in insurance policies.  *See River Park Place Condo. Ass'n v. Fed. Ins. Co.*, No. 22-CV-10526, 2024 WL 21596, at *5 (E.D. Mich. Jan. 2, 2024); *Auto-*

6

1    *Owners Ins. Co. v. Kammerer*, 386 F. Supp. 3d 1030, 1033-34 (D. Minn. 2019); *Certain*

2    *Underwriters at Lloyd's, London Subscribing to Pol'y No. 509/QF037603 v. LM Ericsson*

3    *Telefon, AB*, 272 S.W.3d 691, 696 (Tex. App. 2008).

4      Defendant further correctly notes that undefined terms in a policy are to be given

5    their plain and ordinary meanings. *Hartford Ins. Co. of Midwest v. Halt*, 646 N.Y.S.2d

6    589, 594 (N.Y. App. Div. 1996); *Mongelli v. Chicago Ins. Co.*, No. 99 CV 8149 SJ, 2002

7    WL 32096578, at *3 (E.D.N.Y. Jan. 15, 2002). The ordinary meaning of "investigation"

8    is a "formal or systematic examination or research." *Investigation*, *New Oxford American*

9    *Dictionary* (3d ed. 2010). An ordinary meaning of the word "against," relevant in the

10    context of this exclusion, is "directed at or toward." *Against*, *Cambridge Dictionary*,

11    https://dictionary.cambridge.org/dictionary/english/against (last visited Sept. 3, 2025).

12    When these plain and ordinary meanings are used, the III.B.3 exclusion is not ambiguous

13    – it applies to a claim arising from a "formal or systematic examination" that is "directed

14    at or toward" any **Insured**.

15      The Court cannot conclude, as Plaintiff argues, that the meaning of the phrase

16    "investigation . . . against any **Insured**" is ambiguous because it resides in the same policy

17    as the defined term **Investigation**. The Policy clearly identifies when defined terms are

18    used, printing them in bold font with a capitalized first letter. The regular font and

19    lowercase "investigation" clearly has a different meaning – its plain and ordinary meaning

20    – and is not ambiguous when used in the III.B.3 exclusion.[3]

21             **3.**      **Plaintiff's Severability Argument.**

22      Plaintiff also cites the severability provisions of the Policy, which provide that the

23    wrongful acts of an **Insured** will not be imputed to any other persons. Doc. 129-4 at 66

24    (¶ III.H). He argues that even if the SEC investigation was directed at another **Insured** on

---

[3] The Court wondered aloud during oral argument whether the possibility that reasonable jurors could disagree on whether there was an "investigation . . . against any **Insured**" in June 2020 means that the words of the exclusion are ambiguous, requiring a narrow construction. After further thought, however, the Court concludes that the operative words "investigation" and "against" have plain and ordinary meanings that jurors can apply, and the possibility of different factual findings from the evidence does not mean the words are ambiguous.

June 30, 2020 (Fuels or Mahoney), that **Insured**'s culpability cannot be imputed to him to defeat coverage. Doc. 132 at 16. But exclusion III.B.3 does not work by imputing culpability. It applies when an insurance claim submitted by an **Insured** is based on, arises out of, or in any way involves an investigation against an **Insured** that commenced before the **Policy Period**. Doc. 129-4 at 63-64. In other words, Defendant was insuring against investigations and claims that arose during the **Policy Period**, not those that arose before the period. If exclusion III.B.3 applies to Plaintiff, it is because his claim for coverage arose out of a pre-**Policy Period** SEC investigation against another **Insured**, not because that other **Insured**'s wrongdoing is imputed to Plaintiff.

### 4.    Advancement of Loss Provision.

Plaintiff argues Defendant breached the Advancement of Loss provision of the Policy by refusing to pay attorneys' fees as he incurred them in the SEC investigation. *See id.* at 37. Plaintiff contends Defendant was obligated to advance litigation costs under the Policy and New York law, even before the applicability of the III.B.3 exclusion was decided by a court. Doc. 132 at 20-21. The Court sees some merit in this argument given the provision's language that Defendant "will advance payments of **Loss** *unless and until an order by a court of competent jurisdiction provides . . . that such advancement is not required*[.]" Doc. 129-4 at 37 (emphasis added). In addition, courts have suggested that insurers with such an obligation must advance costs under New York law even if they believe they may have valid coverage defenses. *See Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006) ("Indeed, the duty to defend is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable possibility of coverage.'") (citation modified); *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 92 (N.Y. 1991) ("Even where there exist extrinsic facts suggesting that the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its commitment to provide a defense"). Defense counsel asserted during oral argument that this New York law applies to "duty to defend" insurance policies, but not to mere advancement of loss insurance like the Policy

in this case.  But New York courts do not appear to recognize this distinction.  *See Port Auth. of N.Y. & N.J. v. Brickman Grp. Ltd., LLC*, 115 N.Y.S.3d 246, 261 (N.Y. App. Div. 2019) ("the trend of recent case law, in situations where there is a duty to reimburse defense costs but no duty to defend, is to 'apply traditional duty to defend analysis when determining whether insurers must advance or reimburse insureds' defense expenses'") (citation modified); *Seritage Growth Props., L.P. v. Endurance Am. Ins. Co.*, No. N21C-03-015 MMJ CCLD, 2022 WL 18046813, at *4 (Del. Super. Ct. Dec. 19, 2022) (applying New York law and discussing *Brickman*).

Even if Defendant was obligated to advance losses under the Policy, however, the Court cannot conclude Plaintiff is entitled to summary judgment on his breach of contract claim.  If the Court were to accept Plaintiff's argument and rule now that Defendant was obligated to advance costs, and if the jurors ultimately were to conclude that Plaintiff is not covered by the Policy due to exclusion III.B.3, New York law would require Plaintiff to refund any costs advanced to him by Defendant.  *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 782 N.Y.S.2d 19, 20 (N.Y. App. Div. 2004); *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1219 (2d Cir. 1996).  But because Defendant would not actually have advanced such costs in this case (no final judgment would have been entered), there would be nothing for Plaintiff to refund – he simply would not recover the costs that were never advanced.  In light of this New York law, the jury's finding of no coverage would preclude Plaintiff from recovering the advanced costs.

This would not end the matter, Plaintiff would contend, because he claims to have been injured by Defendant's *interim* failure to advance costs.  He contends that the failure to pay his costs while the SEC matter was pending caused him to lose the services of Attorney Schwartz and required him to accept a highly unfavorable settlement with the SEC.  Doc. 132 at 22.  The facts of this contention, however, are disputed.

Plaintiff cites Schwartz's deposition testimony that he withdrew because Plaintiff could not pay his fees.  Doc. 133 ¶ 71.  Plaintiff also cites his own deposition testimony that he intended to take the SEC case to trial but was unable to do so after Schwartz

withdrew.  *Id.* ¶ 72.  But Plaintiff does not specify when he demanded advance costs from Defendant, when Defendant refused, when Schwartz withdrew, or when Plaintiff decided to settle with the SEC.  Without a clear chronology and related evidence, the Court cannot determine whether Defendant's failure to pay interim costs caused the harm Plaintiff claims.  Although this information might be contained somewhere in the hundreds of pages of exhibits filed by the parties, it is not spelled out in an accessible form by Plaintiff and the Court is not required to scour the record in search of it.  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'" (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (similar).  The Court therefore cannot conclude as a matter of undisputed fact that Plaintiff suffered injury from Defendant's interim failure to advance costs.

What is more, Defendant disputes Plaintiff's factual assertions.  Defendant cites evidence that Plaintiff's litigation costs were, in fact, being advanced by Fuels until it filed for bankruptcy.  Doc. 141 ¶ 71.  Defendant further disputes Plaintiff's evidence that he was willing to take the SEC case to trial (*id.* ¶ 72), and cites testimony from Schwartz that Plaintiff tried to settle with the SEC a year before Schwartz withdrew (*id.*).  Defendant further notes that Plaintiff testified he had access to $500,000 in assets from former investment accounts, but does not know what he did with the money.  *Id.*  In short, Defendant disputes that its failure to advance interim costs caused Plaintiff's claimed injuries.

Given these factual disputes, the Court cannot grant summary judgment for Plaintiff on his claim for breach of the Advancement of Loss provision.  He has not shown all the elements of a breach of contract claim, including damages, as a matter of undisputed fact. *Niagara Foods, Inc. v. Ferguson Elec. Serv. Co., Inc.*, 975 N.Y.S.2d 280, 282 (N.Y. App. Div. 2013) ("It is well settled that the elements of a breach of contract cause of action are

1  the existence of a contract, the plaintiff's performance under the contract, the defendant's

2  breach of that contract, and resulting damages") (citation modified).

3       Nor is the Court comfortable ruling, at this stage of the litigation, that Defendant

4  was obligated to advance funds under the Advancement of Loss provision as a matter of

5  law.  Defendant contends in a footnote of its response brief that Plaintiff's complaint fails

6  to allege the Advancement of Loss provision in its breach of contract claim.  Doc. 140 at

7  21 n.13.  This important argument has received nothing more than a passing reference in

8  the parties' briefs and cursory treatment at oral argument.  The Court declines to decide it

9  on such a scant record.

10       Nor will the Court decide another argument emphasized by Defendant at oral

11  argument – that the Advancement of Loss provision applies only to the portion of the Policy

12  dealing with Representations and Severability.  *See* Doc. 129-4 at 37.  This argument

13  received a mere glancing reference in Defendant's briefing.  *See* Doc. 140 at 21.  Defendant

14  does not explain what meaning the Advancement of Loss provision could have if so

15  confined, and the Court should not interpret a policy provision to be meaningless.  The

16  Court will not resolve this important issue on such a bare record.[4]

17      **C.**    **Breach of Contract Conclusion.**

18       A jury must decide the disputed factual question of whether an SEC investigation

19  was pending against an **Insured** before the **Policy Period** began, as required for application

20  of the III.B.3 exclusion.  The Court therefore cannot grant either party's cross-motion for

21  summary judgment on the contract claim.

22  / / /

23  / / /

24  / / /

---

25  [4] The Court likely will be required before trial to make several interpretive rulings related
26  to the Advancement of Loss claim – whether reliance on the provision is precluded by
Plaintiff's failure to plead it specifically in his complaint, whether the provision is limited
27  to the Representations and Severability portion of the Policy, and whether the provision
required Defendant to advance costs until it had a court ruling relieving it of the obligation.
28  The Court will set a hearing in the near future to fix dates for trial and a final pretrial
conference.  The parties should be prepared at the hearing to address how these issues
should be briefed and decided.

1    **IV.    Insurance Bad Faith.**

2        **A.    Choice of Law.**

3            The parties agreed at oral argument that Plaintiff's bad faith claim is governed by

4    Arizona law.  This is a reasonable agreement the Court will not disturb.  *See Martin v.*

5    *Great Lakes Reinsurance (U.K.), P.L.C.*, No. CV-08-546-PHX-GMSVIN, 2010 WL

6    94120, at *2-3 (D. Ariz. Jan. 6, 2010) (applying Arizona insurance bad faith law in a case

7    where parties chose New York law); *Martin v. T.L. Dallas, Ltd.*, No. CV-08-0546-PHX-

8    DGC, 2008 WL 2705379, at *2-4 (D. Ariz. July 9, 2008) (similar).

9        **B.    Defendant's Motion.**

10            Defendant makes two arguments in support of its request for summary judgment on

11    Plaintiff's bad faith claim.

12            First, Defendant argues that there can be no bad faith where the Policy provides no

13    coverage, and the Court's grant of summary judgment on the breach of contract claim

14    should result in summary judgment here as well.  This argument fails because the Court

15    has denied Defendant's request for summary judgment on the contract claim.

16            Second, Defendant argues that Plaintiff cannot establish the elements of bad faith at

17    trial.  This essentially is a *Celotex* motion.  *See Celotex*, 477 U.S. at 322 (summary

18    judgment is appropriate against a party who "fails to make a showing sufficient to establish

19    the existence of an element essential to that party's case, and on which that party will bear

20    the burden of proof at trial").  In support, Defendant cites various items of evidence

21    suggesting it did not act unreasonably in denying coverage.  *See* Doc. 129 at 20-22.  This

22    evidence will support Defendant's jury arguments, but the proper focus in a *Celotex* motion

23    is on whether Plaintiff has come forward with evidence to support his claim.  *Celotex*, 477

24    U.S. at 322.  The Court accordingly will resolve this issue after addressing Plaintiff's

25    evidence.

26        **C.    Plaintiff's Response and Cross-Motion.**

27            Plaintiff cross-moves for summary judgment on his bad faith claim.  He makes

28    several arguments in support of this motion, each of which will be addressed by the Court.

1

            **1.      Defendant's Failure to Advance Costs.**

2

        Plaintiff contends that Defendant's breach of the Advancement of Loss provision

3

establishes bad faith.  Doc. 132 at 19.  But the Court has not found that the provision was

4

breached, and, even if it had, Plaintiff cites no Arizona authority for the proposition that a

5

mere breach of an insurance provision is enough to support a bad faith claim.  Arizona

6

cases hold to the contrary.  *See, e.g.*, *Taylor v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz.

7

174, 176 (1996) ("the insurer may breach an express covenant without breaching the

8

implied covenant of good faith and fair dealing"); *Rawlings v. Apodaca*, 151 Ariz. 149,

9

157 (1986) ("Failure to perform the express covenant to pay the claim is not the *sine qua*

10

*non* for an action for breach of the implied covenant of good faith and fair dealing. To

11

characterize the cases otherwise, would, in effect, construe them to hold that any breach of

12

the express covenant would give rise to the tort action for bad faith.  We hold explicitly

13

that such a result is not permitted.").

14

            **2.      Defendant's Failure to Communicate.**

15

        Plaintiff argues that Defendant failed to promptly communicate with him – an

16

**Insured** under the Policy – about the status of his claim.  Doc. 132 at 24.  He cites an

17

Arizona regulatory standard that requires insurers to respond to inquiries within 10 days.

18

*Id.* at 23 (citing A.A.C. R20-6-801(E)).  But Plaintiff provides no authority holding that

19

this regulation sets a tort standard for insurance bad faith, and Arizona case law holds that

20

it does not.  *See Melancon v. USAA Cas. Ins. Co.*, 849 P.2d 1374, 1377 (Ariz. Ct. App.

21

1992) ("Appellees also argue that the rule can be considered as a standard of conduct.

22

Rather, we find that the Act was intended to give the department of insurance guidelines

23

for determining whether an insurer's procedures and practices occur with such frequency

24

as to indicate an unacceptable general business practice. If so, then the administrative

25

remedy may apply. . . . The provisions are expressly not a standard of conduct against

26

which an insurer's conduct in handling an individual claim is to be measured for creating

27

a claim for relief.").

28

Moreover, the regulation cited by Plaintiff was created to implement the Arizona Unfair Claims Settlement Practices Act ("UCSPA") (*see* R20-6-801), and that Act does not "provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state." A.R.S. § 20-461(D). It exists "solely [as] an administrative remedy to the director for any violation of this section or rule related to this section." *Id.* Plaintiff has not shown that Arizona regulations establish bad faith tort standards for failure to communicate with reasonable promptness.

Arizona courts have stated, however, that an insurer "has an obligation to *immediately* conduct an adequate investigation, act reasonably in evaluating the claim, and act *promptly* in paying a legitimate claim." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (2000) (emphasis added). Plaintiff argues that Defendant did not act immediately on his claim. He asserts that his attorney, Adam Schwartz, notified Fuels of the SEC's intent to subpoena him and requested Fuels notify Defendant and request coverage. Doc. 133 ¶ 62-63. He claims Schwartz notified Defendant separately through its broker on July 28, 2021. *Id.* ¶ 64. Defendant acknowledged that it received two requests for advance payment of legal fees and expenses from Schwartz on August 4, 2021. *Id.* ¶ 65. Thereafter, Plaintiff asserts that Schwartz made "repeated attempts to discern the status of Wilson's coverage," including in June, July, and August 2021. *Id.* ¶ 66. Defendant eventually issued a denial letter on February 11, 2022, which addressed Plaintiff's claim. *Id.* While other **Insureds** were emailed copies of the letter on March 22, 2022, Plaintiff was not. *Id.* ¶¶ 66-67. Plaintiff asserts that Schwartz made several additional attempts to determine Plaintiff's coverage status on November 14, 2022, and eventually was forwarded a copy of the denial letter on November 22, 2022. *Id.* ¶ 66.

Defendant disputes Plaintiff's characterization of events. It asserts that the request Schwartz sent to Fuels on June 3, 2021 asked the company to notify "Lloyd's Of London" and did not specifically mention PartnerRe or the Policy. Doc. 141 ¶ 62-63. Defendant states that Plaintiff offers no evidence that the broker Schwartz contacted on July 28, 2021 was Defendant's as opposed to Fuel's, and again did not specifically mention PartnerRe or

the Policy. *Id.* ¶ 64. Defendant also notes that Schwartz's communications attempting to determine coverage were sent to third parties, not to Defendant. *Id.* ¶ 66. Defendant argues its coverage counsel attempted to communicate its decision to Plaintiff several times through the **Insureds**' broker and offered to send individual letters to former board members, including Plaintiff, but first requested confirmation of contact information. Doc. 140 at 24. The **Insureds**' broker asked Defendant's coverage counsel to send the individual letters and provided copies of invoices with contact information. *Id.* Because coverage counsel did not receive an invoice for Plaintiff, Schwartz was not included in the March 22, 2022 email. *Id.* at 25.

Defendant asserts additional evidence that it acted reasonably. Defendant retained outside counsel to determine coverage under the Policy. Doc. 130 ¶ 26. Counsel reviewed documentation provided by Fuels' counsel, including communications, requests for documentation, and subpoenas from the SEC; documents provided by Fuels to the SEC; requests for indemnification; and SEC filings. Docs. 129 at 20, 130 ¶ 29-34. Coverage counsel determined there was no coverage for the **Insureds** and issued a 21-page denial letter explaining Defendant's coverage position. Doc. 129 at 20. At the time of the coverage letter, Defendant asserts it was aware only that the SEC intended to subpoena Wilson. Doc. 140 at 24. It did not receive a copy of the subpoena until January 20, 2023, and was unaware the SEC had followed through on its intent until that date. *Id.* Further, Defendant's expert, Bernd G. Heinze, opines that Defendant "acted fairly and in a manner consistent with insurance industry customs, practices standards, and usages[.]" Doc. 129-8 ¶¶ 102.

In short, the parties' evidence raises a dispute of fact as to whether Defendant fulfilled its "obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim." *Zilisch*, 995 P.2d at 280. A jury must resolve this dispute.

/ / /

/ / /

15

### 3.    Defendant Compelled Plaintiff to Institute Suit.

Plaintiff cites A.R.S. § 20-461(A)(8) for the proposition that Defendant acted in bad faith by compelling him to file suit.  As noted above, however, this statute supports state administrative remedies.  Plaintiff cites no authority to show that it establishes a tort standard.

### 4.    Defendant's Failure to Consider New Evidence.

Plaintiff asserts that Defendant failed to consider new information and reassess coverage under the Policy.  Doc. 132 at 25.  The only evidence he cites in support, however, is testimony that Defendant's claims handler did not evaluate Plaintiff's claim during the pendency of this litigation.  *Id.* at 26.  Plaintiff identifies no specific evidence Defendant failed to consider.  In Arizona, "[a]n insurer's duty to re-investigate and re-evaluate an insured's claim is triggered when the insured makes a factual showing that, contrary to the insurer's initial coverage determination, the underlying suit is actually covered by the policy." *Safety Dynamics Inc. v. Gen. Star Indem. Co.*, No. CV-09-00695-TUC-CKJ, 2015 WL 10714048, at *18 (D. Ariz. Feb. 6, 2015).  The insured must identify and make arguments about relevant information.  *Id.* at *20.

While Plaintiff asserts that Defendant received multiple updates about the substantial risk of harm Plaintiff was facing (Doc. 133 ¶ 69), he does not identify any new information relevant to Policy coverage, nor explain how that new evidence should have caused Defendant to rethink its position.  His "bare assertion that additional investigation would have uncovered evidence [of coverage] is insufficient to create a material issue of fact." *Carlson v. Indep. Ord. of the Foresters*, No. CV-15-01230-PHX-PGR, 2017 WL 957283, at *7 (D. Ariz. Mar. 13, 2017).

### 5.    Defendant's Failure to Settle the SEC Claims.

Plaintiff cites evidence that his attorney notified Fuels of the SEC subpoena he received and asked Fuels to put Defendant on notice of his claim.  Doc. 133 ¶¶ 62-63.  He contends Defendant failed to act fairly and promptly to settle the SEC claims against him and again cites the Arizona UCSPA in support of his argument.  Doc. 132 at 26-27.  As

already noted, however, the Arizona statute establishes a regulatory standard; it does not support a private right of action.  And the only evidence Plaintiff cites in support of this bad faith argument is the fact that he asked Fuels to notify Defendant.

### 6.    Bad Faith Conclusion.

Plaintiff has not presented undisputed evidence of bad faith that entitles him to summary judgment.  But he has presented enough evidence to defeat Defendant's *Celotex* motion.  A jury must resolve the factual dispute over whether Defendant fulfilled its "obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim." *Zilisch*, 995 P.2d at 280.

## V.    Declaratory Judgment.

Both parties seek summary judgment on their declaratory judgment claims. Docs. 129 at 6, 132 at 5.  Plaintiff seeks a declaratory judgment that he is entitled to coverage under the Policy, and Defendant seeks a declaratory judgment that he is not. Docs. 1-3 ¶¶ 53-59, 4 ¶¶ 87-110.  Because the Court cannot resolve the breach of contract claim on summary judgment, neither party is entitled to a declaratory judgment at this stage of the litigation.

**IT IS ORDERED:**

1.    Defendant's motion for summary judgment (Doc. 129) is **denied**.

2.    Plaintiff's cross-motion for summary judgment (Doc. 132) is **denied**.

3.    Defendant's unopposed motions for judicial notice (Docs. 131, 142) are **granted** for purposes of this order.

4.    By separate order, the Court will set a hearing to schedule a trial date and final pretrial conference date.

Dated this 9th day of September, 2025.

David G. Campbell
Senior United States District Judge