**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tyler B Wilson,<br><br>  Plaintiff,<br><br>v.<br><br>PartnerRe Ireland Insurance dac,<br><br>  Defendant. | No. CV-23-00738-PHX-DGC<br><br>**ORDER** |

Plaintiff Tyler Wilson brought this suit against Defendant PartnerRe Ireland Insurance. Doc. 1-3 at 5-8.[1] The parties cross-moved for summary judgment and the Court denied both motions. Doc. 147. The Court identified legal issues to be resolved before trial, and asked Plaintiff to file a motion on those issues. Docs. 147 at 11 n.4, 153 ¶ 8. The motion is fully briefed. Docs. 154-56. This order resolves the legal issues.

**I.   Background.**

Plaintiff served as general counsel for Taronis Fuels, Inc. ("Fuels"), which was insured by Defendant under a Directors & Officers Insurance Policy ("Policy"). Doc. 129-4 at 17. The Policy Period provided coverage between July 13, 2020, and July 13, 2021. Docs. 130 ¶ 1, 141 ¶ 1. On June 3, 2021, Plaintiff submitted a claim for insurance coverage under the Policy arising out of a Securities and Exchange Commission ("SEC") proceeding against him. Doc. 133 ¶ 62. Defendant ultimately denied coverage, asserting that exclusions in the Policy applied to Plaintiff's claim. Docs. 130 ¶ 35, 133 ¶ 35.

---

[1] Docket citations are to numbers placed at the top of pages by the Court's CMECF system.

Plaintiff brings this suit for breach of the Policy and bad faith. Doc. 1-3 ¶¶ 27-59. Specifically, Plaintiff claims Defendant breached the advancement of loss ("AoL") provision of the Policy by failing to advance costs Plaintiff incurred in defending against the SEC action. Doc. 132 at 20-21. The legal issues to be resolved before trial concern this provision. Doc. 153 ¶ 8.

## II.     Did Plaintiff Sufficiently Plead Breach of the AoL Provision?

Defendant argued briefly in the summary judgment papers that Plaintiff did not plead breach of the AoL provision in his complaint. Doc. 140 at 21 n.13. The Court was unable to rule on the sparse record related to this argument, and asked the parties to address it more fully. *See* Doc. 147 at 11 n.4.

Plaintiff argues his complaint satisfies the Rule 8 pleading standard, that Defendant also had notice of his breach-of-the-AoL provision claim through its deposition of Plaintiff, and that Plaintiff raised the AoL breach claim in three separate topics of his Rule 30(b)(6) deposition notice. Doc. 154 at 6-16. Defendant contends Plaintiff insufficiently pled the AoL claim because he did not cite the specific provision breached as required by New York law, and otherwise did not articulate facts indicating a breach of the provision; that Plaintiff cannot rely on discovery to preserve an unstated claim; and that the window for amendment of Plaintiff's complaint has long passed and is not otherwise permitted under Rule 16(b). Doc. 156 at 13-20.

"The [Rule 8] standard provides for liberal treatment of a plaintiff's complaint at the pleading stage." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019). The rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

A plaintiff "need not allege the terms of the alleged contract with precision, but the Court must be able generally to discern at least what material obligation of the contract defendant allegedly breached." *Little v. Grand Canyon Univ.*, 516 F. Supp. 3d 958, 964

(D. Ariz. 2021) (citation modified).  A plaintiff may not raise a new theory for breach of contract at the summary judgment stage.  *See Echlin v. PeaceHealth*, 887 F.3d 967, 978 (9th Cir. 2018).

Plaintiff's complaint alleges the following facts:

- Defendant's Policy promises to cover judgments, attorneys' fees, and costs "resulting from any 'Claim,' 'Investigation,' or 'Inquiry' against [Plaintiff] during the Policy Period."  Doc. 1-3 ¶ 15.
- On May 17, 2021, the SEC notified Plaintiff "that it was seeking his testimony in relation to an investigation" of his employer.  *Id.* ¶ 18.
- On May 26, 2021, Plaintiff retained legal counsel.  *Id.* ¶ 19.
- As early as June 3, 2021, Plaintiff asked his employer to put Defendant on notice of his demand for coverage.  *Id.* ¶ 20.
- Defendant ignored Plaintiff's demands and ultimately denied coverage.  *Id.* ¶¶ 21, 23.
- Defendant breached the Policy by refusing coverage.  *Id.* ¶ 28.
- As a result of Defendant's breach, Plaintiff was "forced to self-fund his defense, resulting in personal financial peril and distress."  *Id.* ¶ 35.
- As a result of Defendant's breach, Plaintiff "has been damaged in a sum total to be proven at the time of trial."  *Id.*
- Plaintiff is entitled to declaratory judgment "that he is entitled to coverage under the Policy for his defense against the SEC's proceedings."  *Id.* ¶ 58.

These allegations are sufficient to put Defendant on notice of Plaintiff's claim that Defendant breached the Policy by failing to advance funds for his defense against the SEC action.  They allege that (1) the Policy covered attorneys' fees, (2) Plaintiff sought coverage under the Policy eight days after retaining legal counsel to respond to the SEC investigation, (3) Defendant's breach of the Policy required Plaintiff to self-fund his defense, (4) the breach caused Plaintiff financial peril and harm, and (5) Plaintiff is entitled to coverage for his defense costs in the SEC proceeding.  These allegations are sufficient

to inform Defendant that Plaintiff is claiming breach of the Policy based on Defendant's failure to fund his attorneys' fees and defense. While Plaintiff did not specifically name the AoL provision, the intent of the claim was sufficiently clear, and Plaintiff attached the Policy to the complaint and incorporated it by reference. *Id.* ¶ 12.

Defendant's cited cases do not support its argument that Plaintiff must plead the specific provision of the contract that allegedly was breached. The first case cited by Defendant, *Miron v. Herbalife International, Inc.*, 11 Fed. App'x 927 (9th Cir. 2001), is a memorandum decision that cannot be cited to this Court under Ninth Circuit Rule 36-3. And even if it could be cited, it does not support Defendant's assertion. The Court of Appeals held that the breach of contract claim failed because there was no contract that gave plaintiffs the rights they were asserting. *Id.* at 929.

Defendant cites two cases for the proposition that a breach of contract claim under New York law must cite the specific provision of the contract breached. But Plaintiff's complaint is controlled by federal pleading standards, not New York pleading standards. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., PA*, 781 F.3d 1254, 1259-60 (11th Cir. 2015) (state law heightened pleading requirement did not apply); *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006) (state law fact-pleading requirements did not apply in federal court); *Anderson v. Diorio*, 349 F,3d 8, 17 (1st Cir. 2003) (state pleading standards irrelevant in federal court). What is more, other New York cases disagree with Defendant's cited New York cases. *See Winston Salem RI LLC ex rel. S. Bend Hotel Owner LLC v. Ladder Cap. Fin. LLC*, 192 N.Y.S.3d 58, 60 (N.Y. App. Div. 2023) ("[T]here is no heightened pleading requirement for breach of contract claims and [a] plaintiff need not cite the specific provisions of the contract it alleged was violated to avoid dismissal." (citation omitted)).

The fact that the Policy is governed by New York law makes no difference. *Am. Express Co. v. Xiongwen Rui*, No. CV-18-01281-PHX-DWL, 2020 WL 2395103, at *2 (D. Ariz. May 12, 2020) ("Contractual choice of law provisions typically apply to only substantive issues[.]"); *Ontario, Inc. v. Samsung C & T Corp.*, 103 N.E.3d 774, 777 (N.Y.

2018) (declining to incorporate New York procedural law based on a New York choice of law provision); *Otay Hydraulics, Inc. v. Safety-Kleen Sys., Inc.*, No. 2:12-CV-07357-ODW, 2013 WL 1898573, at *3 (C.D. Cal. May 6, 2013) ("General contractual choice-of-law provisions will only be construed as incorporating state substantive laws, [not] state procedural laws." (citation modified)).

Nor can the Court conclude that Defendant was somehow surprised by the AoL claim being raised in the summary judgment briefing. Defendant deposed Plaintiff about his expectation that his defense costs would be advanced under the Policy. *See* Doc. 154 at 13-14. Defendant's alleged duty to advance costs was also addressed during Plaintiff's Rule 30(b)(6) deposition of Defendant. *See id.* at 16.[2]

The Court concludes that Plaintiff's AoL claim was sufficiently pled under the Rule 8 pleading standard.

### III. Is Advancement of Loss Limited to a Specific Part of the Policy?

Plaintiff contends that the Policy obligated Defendant to pay attorneys' fees he incurred in defending against the SEC proceeding, that the AoL provision obligated Defendant to advance those fees as they were incurred, and that Defendant's breach of this obligation caused him to lose his defense counsel and forced him to accept an unfavorable settlement with the SEC, resulting in substantial financial damage. Doc. 1-3.

Defendant argues that the AoL provision is limited to the Representations and Severability portion of the Policy and therefore is triggered only when Defendant seeks to void the Policy on the basis of a misrepresentation in an insurance application. Doc. 156 at 21. Because Defendant has not sought to void the Policy in this case, Defendant claims it has no obligation to advance costs to Plaintiff under the AoL provision. *Id.* at 21-22.

This disagreement presents a question of contract interpretation – what does the AoL provision mean in light of its language and its location in the Representations and

---

[2] Defendant argues that it objected to Plaintiff's Rule 30(b)(6) topics that identified the AoL issue, but Defendant's objections asserted that the topics made unfounded legal conclusions, that there was no obligation in the Policy to advance costs in this case, and that Defendant would provide a witness to address Defendant's coverage position. Doc. 154-5 at 6-8. Defendant did not object that the AoL claim was not raised in Plaintiff's complaint. *Id.*

Severability section of the Policy? Under New York law, "[t]he initial interpretation of a contract is a matter of law for the court to decide." *XL Specialty Ins. Co. v. Level Glob. Invs., L.P.*, 874 F. Supp. 2d 263, 280 (S.D.N.Y. 2012) (citing New York cases).[3] In making that decision, "a court may not view the particular terms at issue in a vacuum. Rather, it must view these terms from the perspective of one who has examined the context of the entire integrated agreement." *Id.*

"[A]n ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 281. "[A]ny ambiguity must be construed in favor of the insured and against the insurer." *Id.* The insurance company "has the responsibility of making its intention clearly known." *Id.*

The Policy issued by Defendant is difficult to follow. It is 65 pages long, with 37 pages of endorsements and modifications before one even gets to the Policy itself. *See* Doc. 129-4 (the Policy appears to begin at Doc. 129-4 at 51). The language is bare-bones, with little explanation or context for its meaning.

The actual insurance obligations appear to begin in the "Insuring Clauses," 38 pages into the document. *Id.* at 51. These clauses incorporate numerous terms that are defined elsewhere, so their meaning cannot be determined on a simple reading. For example, the first three defined terms in the first sentence of the Insuring Clauses are "Insured Persons," "Loss," and "Claim." *Id.* And yet "Insured Persons," which is defined five pages later in the Policy, includes more than 8 paragraphs and 100 words. *Id.* at 56-57. The term "Loss" includes more than 15 paragraphs and 200 words (*id.* at 58-60), and the term "Claim" includes 8 paragraphs and more than 150 words (*id.* at 52-53). And this does not even include other defined terms in the first sentence. Thus, reading and understanding just the

---

[3] This quotation and the following quotations from the *XL* and *WorldCom* cases omit quotation marks and citations.

- 6 -

first sentence of the Insuring Clause requires searching out and parsing five different defined terms, pages away, containing dozens of paragraphs and hundreds of words.

Nonetheless, it is clear the Policy covers Plaintiff and attorneys' fees, unless an exclusion applies.[4] Insuring Clause 1.A obligates Defendant to pay any "Loss" resulting from any "Claim" against an "Insured Person." Doc. 129-4 at 51. Defendant does not dispute that Plaintiff, as an officer of Fuels, was an Insured Person under the Policy. *See* Docs. 1-3 ¶ 14, 4 ¶ 104. "Claim" includes regulatory proceedings like those initiated by the SEC. Doc. 129-4 at 52. And "Loss" includes "Costs" (*id.* at 58), which in turn include "reasonable and necessary legal fees" (*id.* at 54).

The AoL provision at issue in this case is not itself a promise of insurance, so one would not expect to find it in the Insuring Clauses. Instead, it is a promise of when insurance will be paid. Plaintiff contends the AoL provision obligated Defendant to advance money to cover his attorneys' fees in the SEC proceeding. The provision reads:

> Underwriters agree to advance payments of **Loss** unless and until an order by a court of competent jurisdiction provides either that such advancement is not required or that coverage is void *ab initio*, subject to the condition that such advance payments by Underwriters shall be repaid to Underwriters by the **Company** or the **Insured Persons** according to their respective interests as soon as reasonably practicable after an order provides that such advancement is not required or that coverage is void *ab initio*.

*Id.* at 72 (bolded words are defined terms).

This provision is found in a portion of the Policy titled "General Conditions," and in a section titled "Representations and Severability." *Id.* at 71. This section was amended by an endorsement that includes an identical AoL provision and minor changes to other terms that are not relevant to this decision. *Id.* at 37.[5]

---

[4] Defendant contends that exclusions apply. Doc. 4. ¶¶ 68-69. Whether the facts in this matter triggered Policy exclusions will be decided at trial.

[5] The endorsement changes "knowledge" to "actual knowledge" in the two narrow provisions authorizing voidance of the Policy. *See* Doc. 129-4 at 37, ¶ (A)(2)(a)-(b); 72 ¶ (A)(2)(a)-(b).

Defendant contends that the AoL provision's location in the Representations and Severability section of the Policy means it is limited to that section and applies only when the section applies. Defendant contends the section specifies when Defendant may void insurance coverage based on misrepresentations made in the insurance application, and the AoL provision therefore applies only when Defendant seeks to void an insurance policy, which it does not do here. Doc. 156 at 21-22. After careful review of the Policy as a whole, the Court does not agree with Defendant's reading.

The Representations and Severability section does more than identify cases where the Policy can be voided on the basis of misrepresentations. It does at least two things.

First, the section identifies two narrow classes of cases where Defendant "may only seek to void coverage, *ab initio*," on the basis of misrepresentations in the application. Doc. 129-4 at 37, ¶ (A)(2). These include Insuring Clause I.B, to the extent the Company indemnifies any Insured Person who had actual knowledge of a misrepresentation in the insurance application (*id.* ¶ (A)(2)(a)), and Insuring Clause I.C, for the insured company when the chief executive officer or chief financial officer of the company had actual knowledge of the misrepresentation (*id.* ¶ (A)(2)(b)).

Second, the Representations and Severability section identifies a broader class of cases where the Policy cannot be voided on the basis of misrepresentations in the application. It states that "this Policy shall not be voided, in whole or in part, with respect to Insuring Clause I.A." *Id.* ¶ (A)(3)(i). It also states that "this Policy shall be non-rescindable with respect to the coverage afforded under Insuring Clauses I.A., I.B., I.C. and I.D." *Id.* ¶ (A)(3)(ii).[6]

Thus, the Representations and Severability section is not as narrow as Defendant asserts. It covers categories of cases that can be voided, categories of cases that cannot be voided, and categories of cases that cannot be rescinded. If the AoL provision is limited

---

[6] The Policy does not describe the difference between declaring coverage void and rescinding the policy, but that distinction is not relevant here. Plaintiff's coverage by Insuring Clause I.A falls in both categories. And Defendant uses the terms interchangeably. *See* Doc. 156 at 25 ("PartnerRe has the right to seek to rescind or void the Policy ab initio.").

to the categories of cases identified in the Representations and Severability section of the Policy, as Defendant argues, then it applies to all of the categories in that section – voidable, nonvoidable, and non-rescindable. Plaintiff, who is covered by Insuring Clause I.A, falls into two of these three categories – nonvoidable and non-rescindable – and the AoL provision therefore applies to him. Nothing in the provision suggests it is limited to cases where Defendant seeks only to void the insurance coverage. Thus, even if Defendant is correct in its argument that the AoL provision does not apply outside of the Representations and Severability section, Plaintiff is covered by it.

There is another reason the AoL provision is most reasonably read this way. As Plaintiff notes, the provision obligates Defendant to make advancements "unless and until an order by a court of competent jurisdiction provides *either* that such advancement is not required or that coverage is void *ab initio*[.]" *Id.* at 37 (emphasis added). Thus, Defendant may refuse to advance costs in two situations: (1) when it obtains a court order that "such advancement is not required," and (2) when it obtains a court order that "coverage is void *ab initio*." The first phrase would be entirely unnecessary if Defendant is correct that the AoL provision applies only when Defendant seeks to void insurance coverage. Such a case would be covered entirely by the second phrase and the first would be meaningless. Under New York law, however, courts should avoid policy interpretations that render language meaningless. *XL*, 874 F. Supp. 2d at 285 ("An insurance contract should not be read so that some provisions are rendered meaningless."). If the first phrase has meaning, it is because the AoL provision applies to more than voidance cases. Therefore, when read to give its words their full meaning, the AoL provision states that Defendant can refuse to advance costs in cases like this one – that do not seek to void the insurance policy – only when a court rules that "such advancement is not required." Doc. 129-4 at 37. Thus, the AoL provision applies to the broad category of cases described in the Representations and Severability section where voidance is not available, categories which encompass Plaintiff.[7]

---

[7] The Court is not persuaded by Defendant's argument that both types of court orders can have meaning in a voidance case because a court might rule, on a request for preliminary

- 9 -

In summary, the Court concludes that the most reasonable reading of the AoL provision and the Representations and Severability section is that Plaintiff is covered by the AoL provision.

Defendant makes a variety of arguments in support of a contrary interpretation. Doc. 156 at 25-33. The Court does not find them persuasive, for reasons set forth above. But even if the Court found that Defendant's interpretation had some merit, that would simply mean that there are reasonable alternative interpretations of the policy – Plaintiff's and Defendant's – which is the very definition of ambiguity under New York law. *XL*, 874 F. Supp. 2d at 281 ("[A]n ambiguity exists where the terms of an insurance contract could suggest more than one meaning[.]"). The ambiguous Policy would then be construed against Defendant. This is particularly true when the ambiguity concerns an obligation to advance costs. "Under New York law, where a contract of insurance includes the duty to defend or to pay for the defense of its insured, that duty is a 'heavy' one." *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 464 (S.D.N.Y. 2005). "[T]he duty to pay defense costs is construed liberally and any doubts about coverage are resolved in the insured's favor." *Id.*

The Court construes the AoL provision in Plaintiff's favor. The provision applies to Plaintiff and he is entitled to assert a claim for its breach.[8]

---

injunctive relief, that an insured is not entitled to advancement of costs, but without deciding whether the policy should be voided. Doc. 156 at 26-27. If Defendant's basis for denying advancement of costs is that a policy is void, however, Defendant does not explain how a court could conclude that advancement is not required without also deciding whether the policy is in fact void. Indeed, the only case Defendant cites for this proposition required costs to be advanced until the merits of the voidance argument could be decided. *See Great Am. Ins. Co. v. Gross*, 2005 WL 1048752, at *6 (E.D. Va., May 3, 2005).

[8] Defendant cites *XL* for the proposition that advancement of costs may be required when an insurer seeks to void coverage, and would be subject to abuse if required in cases where the insurer claims an exclusion applies. *See* Doc. 156 at 21. But parties to an insurance contract can structure their obligations through agreement, and the question in this order is what the parties' insurance contract requires, not what general New York law would require in the absence of a contract provision that specifically addresses advancement of costs. Indeed, the court in *XL*, in the same section of the opinion cited by Defendant, noted that "the Insureds have not pointed to language in the Policy that would support, or at least arguably support, their claim of a duty to advance [costs] pending a judicial determination of whether the Exclusion applies." *XL*, 874 F. Supp. 2d at 289. The insured in this case has pointed to such language. *See* Doc. 154 at 18-19. Nor is the Court persuaded by

- 10 -

### IV. Did the AoL Provision Require Advancement of Costs Until Defendant Obtained a Court Order Reliving It of the Obligation?

Plaintiff argues that the express language of the AoL provision, New York law, and public policy support finding Defendant had a duty to advance costs. Doc. 154 at 20-21.

Defendant argues that it had no duty to advance defense costs – its promise in the AoL provision notwithstanding – because (a) the Policy includes no "duty to defend" and (b) New York courts require the advancement of defense costs in the absence of a duty to defend clause only when an insurer seeks to void an insurance policy and not when an insurer claims that a policy exclusion applies. Doc. 156 at 23-24. As noted above, however, this is a case of contract interpretation. The question is what Defendant agreed to do in the Policy, not what New York law requires in the absence of an AoL provision.

What is more, the Court does not find Defendant's characterization of New York law persuasive. The Court's review of New York cases has not revealed a bright distinction between duty to defend insurance policies and policies with promises to reimburse defense costs, as Defendant contends. Instead, New York cases suggest there is not a dramatic difference. *See, e.g.*, *Port Auth. of N.Y. & N.J. v. Brickman Grp. Ltd., LLC*, 115 N.Y.S.3d 246, 261 (N.Y. App. Div. 2019) ("[T]he trend of recent case law, in situations where there is a duty to reimburse defense costs but no duty to defend, is to 'apply traditional duty to defend analysis when determining whether insurers must advance or reimburse insureds' defense expenses.'"); *Westpoint Int'l, Inc. v. Am. Int'l S. Ins. Co.*, 71 899 N.Y.S.2d 8, 9 (N.Y. App. Div. 2010) ("Although defendant makes much of it, the fact that the policy is not a 'duty to defend' policy is not dispositive here, since the policy expressly requires

---

Defendant's citation to *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 357 (2d Cir. 2024). Doc. 156 at 22. That case addressed whether a preliminary injunction requiring advance payment of defense costs was warranted, not the meaning of the insurance policy. *See Daileader*, 96 F.4th at 357 ("Nor did the Syndicate ever agree that its policy would cover Daileader's costs in the adversary proceedings. The parties' rights and obligations under the policy were therefore unsettled. Accordingly, Daileader's suggestion that an injunction would only 'enforce what Syndicate 1861 already was obligated to do' is unpersuasive.").

- 11 -

1  defendant to advance defense costs, subject to recoupment of any amounts advanced for
2  claims ultimately determined not to be covered." (citations omitted)); *WorldCom*, 354 F.
3  Supp. 2d at 464 ("Under New York law, where a contract of insurance includes *the duty to*
4  *defend or to pay for the defense of its insured*, that duty is a 'heavy' one." (emphasis
5  added)). Thus, the fact that the Policy does not include a duty to defend does not relieve
6  Defendant of its promise in the Policy to reimburse defense costs.[9]

7  New York law provides that an insurer's obligation to reimburse defense costs is
8  triggered when defense costs are incurred by the insured, not when a judgment eventually
9  is entered against the insured. "The only reasonable interpretation of [a] loss clause in [a]
10 . . . [Directors and Officers] Policy is that the insurer's obligation to pay accrues when the
11 insured incurs the obligation, not after it has paid a judgment." *Fed. Ins. Co. v. Kozlowski*,
12 792 N.Y.S.2d 397, 403 (N.Y. App. Div. 2005) (citation omitted). "[U]nder a directors and
13 officers liability policy calling for the reimbursement of defense expenses, . . . insurers are
14 required to make contemporaneous interim advances of defense expenses where coverage
15 is disputed, subject to recoupment in the event it is ultimately determined no coverage was
16 afforded." *Id.* (citation modified); *see also WorldCom*, 354 F. Supp. 2d at 464 ("The duty
17 to pay defense costs exists whenever a complaint against the insured alleges claims that
18 may be covered under the insurer's policy.").

19 Finally, as noted above, the AoL provision states that Defendant will "advance
20 payments of Loss unless and until an order by a court of competent jurisdiction provides
21 either that such advancement is not required or that coverage is void *ab initio*[.]" Doc. 129-
22 4 at 37. Defendant was thus obligated to pay Plaintiff's defense costs until a court told it
23 otherwise.

---

[9] The Court is not persuaded by Defendant's authorities. *See* Doc. 156 at 24. The first case cited by Defendant, *QBE Ams., Inc. v. ACE Am. Ins. Co.*, 997 N.Y.S.2d 670 (N.Y. Sup. Ct. 2014), *aff'd*, 84 N.Y.S.3d 110 (N.Y. App. Div. 2018), is an unpublished decision. Further, it concerns an insurance policy that, like the Policy in this case, expressly disclaimed a duty to defend. Significantly, however, the policy apparently did not include an obligation to advance defense costs like the AoL provision. *See* 2014 WL 4250089, at *1-3, 7 (only the Westlaw version of this unpublished opinion is available). Defendant's other case, *Gilbane Bldg. Co./TDX Const. Corp. v. St. Paul Fire & Marine Ins. Co.*, 38 N.Y.S.3d 1, 8 (N.Y. App. Div. 2016), concerns the interpretation of an additional insured provision. It never mentions a duty to defend policy or an obligation like the AoL provision.

**IT IS ORDERED:**

1. Plaintiff's motion for a legal ruling (Doc. 154) is **granted.** The Court reaches the following legal conclusions: (a) Plaintiff's complaint sufficiently pleads a claim for breach of the AoL provision; (b) the AoL provision applies to this case; and (3) the AoL provision obligated Defendant to advance costs until a court ruled otherwise.

2. These decisions of law will apply during the trial of this case. The parties should craft their proposed jury instructions in light of these rulings. Defendant can, of course, preserve its objection to these rulings for purposes of appeal.

3. Plaintiff is still not entitled to summary judgment for reasons the Court previously explained. *See* Doc. 147 at 9-11.

Dated this 24th day of November, 2025.

*David G. Campbell*
David G. Campbell
Senior United States District Judge